**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTERN PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TEXTRON INC., SCOTT C. DONNELLY, AND FRANK T. CONNOR, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No.

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Building Trades Pension Fund of Western Pennsylvania ("Plaintiff"),

individually and on behalf of all others similarly situated, alleges the following based on

personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to

all other matters based upon the investigation conducted by and through Plaintiff's attorneys,

which included, among other things, a review of Securities and Exchange Commission ("SEC")

filings by Textron Inc. ("Textron" or the "Company"), as well as conference call transcripts and

media and analyst reports about the Company.  Plaintiff believes that substantial evidentiary

support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all investors who purchased or

otherwise acquired Textron common stock between January 31, 2018 and October 17, 2018,

inclusive (the "Class Period").  The action is brought against Textron and certain of the

Company's executives for violations of Sections 10(b) and 20(a) of the Securities Exchange Act

of 1934 (the "Exchange Act"), and Rule l0b-5 promulgated thereunder.

2.      Textron is a global manufacturer and distributor of small aircrafts and

recreational vehicles.  On March 6, 2017, Textron expanded its recreational vehicle business

through its $316 million acquisition of Arctic Cat Inc. ("Arctic Cat").  Upon the completion of

this transaction,  Arctic Cat became an indirect wholly-owned subsidiary of Textron.

3.      Arctic Cat designs and manufactures a variety of recreational vehicles, including

all-terrain vehicles and snowmobiles.  Arctic Cat revenues are generated through sales to

independent dealers.  When the deal closed in March 2017, Textron's Chief Executive Officer

("CEO") Scott Donnelly ("Donnelly") stated that the "addition of Arctic Cat to [the Company's]

Textron Specialized Vehicles business instantly gives [Textron] a deeper product line for

customers, greater potential for innovation, and introduces new sales opportunities for [its] worldwide dealer network."

4.     During the Class Period, Textron repeatedly touted Arctic Cat as an important growth business for the Company, reassuring investors about dealer demand, end market sales and earnings prospects for its Arctic Cat products.  At the same time, Defendants (as defined herein) failed to disclose that: (1) end market sales of Arctic Cat products were slowing, resulting in a massive glut of old Arctic Cat inventory on dealers' floors; (2) in order to clear out this old inventory, the Company provided significant price discounts, which negatively impacted Textron's earnings; and (3) as a result, Textron's positive statements about Arctic Cat's business, operations, and prospects lacked a reasonable basis.

5.     The truth about Arctic Cat's inventory problems was revealed on October 18, 2018, when Textron reported weak third quarter 2018 earnings and cut its full-year 2018 forecast.  The Company blamed the shortfall on heavy discounts issued by Textron to clear out old inventory.  Analysts immediately lowered their price targets on Textron stock citing the inventory concerns at Arctic Cat.

6.      On this news, Textron's stock fell $7.29 or 11.25 percent, to close at $57.49 on October 18, 2018, erasing $1.8 billion from its market capitalization.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17

C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.       Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15

U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or

the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein,

including the preparation and/or dissemination of materially false and/or misleading information,

occurred in substantial part in this Judicial District.  Textron transacts business in this District,

and the Company's stock trades on the New York Stock Exchange ("NYSE"), located within this

District.

10.       In connection with the acts alleged in this Complaint, Defendants, directly or

indirectly, used the means and instrumentalities of interstate commerce, including, but not

limited to, the mails, interstate telephone communications and the facilities of the national

securities markets.

## PARTIES

11.       Plaintiff Building Trades Pension Fund of Western Pennsylvania is a defined

benefit plan that manages assets for active and retired members of various labor unions.  Plaintiff

is located in Pittsburgh, Pennsylvania.  As shown in the attached certification, Plaintiff purchased

shares of Textron common stock during the Class Period and suffered damages as a result of the

violations of the federal securities laws alleged in this action.

12.       Defendant Textron, a global manufacturer of small aircrafts and recreational

vehicles, is headquartered in Providence, Rhode Island, with principal executive offices located

at 40 Westminster Street, Providence, Rhode Island 02903.  The Company's stock is listed on the

NYSE under the ticker symbol "TXT."

13.     Defendant Scott C. Donnelly ("Donnelly") is, and has served as the Company's Chairman , CEO and President thoughout the Class Period.

14.     Defendant Frank T. Connor ("Connor") is, and has served as the Company's Chief Financial Officer and Executive Vice President thoughout the Class Period.

15.     Defendants Donnelly and Connor are referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Textron's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

16.     Textron and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Defendant Textron is a global manufacturer and distributor of aircrafts, recreational vehicles, and other mechanical products.  The Company's five operating segments are: (1) Industrial; (2) Textron Aviation; (3) Bell; (4) Textron Systems; and (5) Finance.  The

Industrial segment is subdivided into the following three businesses: (1) Textron Specialized Vehicles; (2) Fuel Systems and Functional Components; and (3) Tools and Test Equipment.  The Company's products include airplanes, helicopters, weapon systems, and recreational vehicles.

18.     On March 6, 2017, Textron announced the completion of its acquisition of Arctic Cat, a publicly-held vehicle manufacturer pursuant to a cash tender offer for $18.50 per share, followed by a short-form merger.  Arctic Cat became an indirect, wholly-owned subsidiary of the Company within the Textron Specialty Vehicles sub-segment.  Based in Minneapolis, Minnesota, Arctic Cat designs and manufactures a variety of recreational vehicles, including all-terrain vehicles and snowmobiles.  The cash paid for this business, including repayment of debt, totaled $316 million.

19.     The acquisition of Arctic Cat was part of the Company's strategy to expand and grow its Textron Specialized Vehicles business, under the Industrial segment.  At the time of the acquisition, CEO Scott Donnelly stated that the "addition of Arctic Cat to [the Company's] Textron Specialized Vehicles business instantly gives [Textron] a deeper product line for customers, greater potential for innovation, and introduces new sales opportunities for [its] worldwide dealer network."   On April 19, 2017, during an earnings conference call with analysts and investors, CEO Donnelly described the acquisition as an instant benefit to the Company as it "immediately broadens [Textron's] presence in the powersports segment and significantly expands our dealer network."

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

20.     The Class Period starts on January 31, 2018, more than nine months after the acquisition of Arctic Cat was completed.  On that date, Textron issued a press release announcing its financial results for the fourth quarter ended December 30, 2017.  The press

release provided positive statements about the Company's Industrial Segment,  with "revenues [of] $1.1 billion, up 20 percent largely related to Arctic Cat.  Segment profit was up $10 million from the fourth quarter of 2016 due to favorable performance."

21.     Also on January 31, 2018, during the Company's fourth quarter 2017 earnings conference call with analysts and investors, Defendant Donnelly made the following positive statements about the Company's Industrial Segment, particularly as a result of the Arctic Cat acquisition, and downplayed issues surrounding many of its end markets:

> Moving to Industrial, revenues were up 20% for the quarter, primarily reflecting the impact of Arctic Cat. We saw improved demand in the snow retail channel, allowing dealers to clear all their inventory and drive 2018 model sales, including our new introductions in the youth and mountain categories. We also saw higher sales in our E-Z-GO product line, led by our new lithium powered ELiTE golf car. At Textron GSC, our ground transport business received an order from Airpro in Finland for [7] Safeaero Typhoon deicers.

> ***

> In summary, we came in to 2017 knowing it would be a challenging year with uncertainties surrounding many of our end markets, several key product development programs nearing key milestones and restructuring integration activities in many of our businesses. That said, we have entered now a 505 into service, 525 is resuming its flight test program, we achieved first flight on the V-280, we had successful demonstration on both the Scorpion and the AT-6 in the U.S. Air Force OA-X program, the Longitude is nearing its certification and entry into service.  Denali is progressing towards first flight and **we've successfully integrated the integration of Arctic Cat.**

> **With these accomplishments behind us and improving end markets, we're well positioned coming into 2018.**

(Emphases added).

Later in the call, when questioned by an analyst about whether Arctic Cat was "going to hit the target of being accretive [that] year," Defendants Donnelly and Conner each responded in the affirmative with a "yes."

22.    On April 18, 2018, Textron issued a press release announcing its financial results for the first quarter 2018, reporting positive growth and increased revenues.  The press release stated in relevant part:

> "Increased revenues reflected growth at Industrial, Bell, and Textron Aviation, with lower revenues at Textron Systems, consistent with our expectations," said Textron Chairman and CEO Scott C. Donnelly. "Operationally we achieved significant margin improvements at Textron Aviation and Textron Systems over this quarter last year and sustained margin strength at Bell, reflecting strong performance in these segments."

The press release further stated that despite the increased revenue in the Industrial segment, the "Segment profit was down $12 million despite the increase in revenues from the first quarter of 2017, due to the timing of the Arctic Cat acquisition in the prior year."

23.    On that same day, during the Company's first quarter 2018 earnings conference call with analysts and investors, Defendant Donnelly made the following positive statements about the Company's Industrial Segment despite analyst concern about "very low first quarter" performance:

> I think … [that] the challenge we described in Q1 is, first of all, we had a couple months of Arctic Cat where we didn't have that a year ago. And it's a difficult quarter. I mean, I think the whole industry in outdoor power equipment when you look at this - the difficulty is that January, February and the March time frame is you're done selling snow, but you haven't started selling dirt.
>
> So it tends to be a quarter where you have - basically you have the cost of the business, but you don't have a lot of revenue within the business. So **I think that's just its natural cycle, and it doesn't affect our perspective on and how we feel about the year.**

- 7 -

> In terms of the inventory reduction, we are pleased with, if you look at both dirt and snow, inventory reductions that happened through the course of the year, which was a big focus of ours, yielded a lot of results. **So there's pretty significant reductions in that aged inventory.**
>
> So I think combined between that and the fact that we have a lot of new product that we think the dealers are pretty excited about. And when you look across both the dirt and the snow product lines, **you've got lower inventory of aged stuff and you've got a lot of exciting new stuff that would be on the floors that the dealers are pretty excited about. So we feel pretty good about where we are for the year**.

(Emphases added).

24.     During the first quarter 2018 earnings call, Defendant Connor reiterated the Company's positive results and downplayed any issues with inventory build, stating in relevant part:

> Working capital was, I think we did a nice job on working capital in the first quarter. It's always seasonal. We did see a little bit of inventory build, but it was better than last year. Some things, because of 606 shift out of inventory and into other current assets. Because they're contract assets now, you see a little bit of that happening on the accounts receivable side as well.
>
> But overall, a good quarter from a cash flow standpoint again relative to where we typically are in the first quarter. For kind of full year, as we said . . . there will be some operating cash flow impact associated with the divestiture of Tools & Test, but we will absorb that within the forecast and kind of make up for that with better cash performance in other areas.

25.     On July 18, 2018, during the Company's second quarter 2018 earnings conference call,  Defendant Donnelly made the following positive statements about the Company's Industrial Segment despite lowered segment profit due to the mix of products sold:

> Well, I think we are seeing profit improvement in Arctic Cat and we would continue to expect to see incremental margins frankly overall in our industrial segment improving as the year goes on, I mean despite that we are taking out Tools & Test, so, the total year guidance is down a little bit, but we will certainly expect to see

positive progression here through the balance of the year. Look, the Snow is obviously not in a retail phase right now, right, we're kind of in the production side of that and the stocking. So, that's – which again I think is quite favorable for us. **We feel really good about where that business is and what the stocking orders look like.** On the Dirt side of the business, we are seeing improvements. Having the XX out there is - it's later than was expected when we did the acquisition, but it is fully in the market.  And we're frankly struggling to meet demand of producing them.  And we've just launched the Pilot Pro, which launches into the – really the largest segment of that market. We think we've got a great product.  But again that's one that's just barely starting to run through the production line and get deliveries out to the dealer,.  So again a model that we are seeing strong demand. We've just got to produce as quickly as we can. **So, I think the end market of all the data I see is positive here in the last couple of months. We are certainly seeing strong demand on the products that we have launched into the marketplace and obviously expect to see the revenue and the margin continue to expand through the balance of the year.**

(Emphases added).

26.     During the same call, when questioned by an analyst about the "distribution inventory levels with Arctic Cat now that" the winter season had ended, Defendant Donnelly reiterated its positive statements about the unit, stating in relevant part:

I'm afraid I don't have those numbers at my fingertips here, but I mean, we continue to make progress.  And I would say most importantly when we look at what's in the inventories it's pressure stuff, right?  So, I mean a **lot of the stuff that was really older inventory has been moved off their . . . books. I mean, obviously these guys are taking re-stockings of current model year product**. Probably not a lot of change in snow. I mean, we are at that time of the year obviously, where we are producing all the snow product for next year.  And we'll start those loadins here as we get into the latter part of the year. **I'd say the good news is demand from the dealers, what we are seeing is up and we've got a couple of great new products.** I mean, last year was great in terms of burning down a lot of the inventory; we had some new stuff that came out last year that helped.  But we've got a . . . couple of pretty exciting 2019 models that are driving some pretty strong preorder - preseason order demand, which we are building

now, and we we'll start to load in here in the next couple of
months.

(Emphases added).

27.     The statements referenced above in ¶¶ 20 - 26 were materially false and

misleading as they failed to disclose and misrepresented the following adverse facts which were

known to Defendants or recklessly disregarded by them.  Specifically, Defendants failed to

disclose that: (1) end market sales of Arctic Cat products were slowing, resulting in a massive

glut of old Arctic Cat inventory on dealers' floors; (2) in order to clear out this old inventory, the

Company provided significant price discounts, which negatively impacted Textron's earnings;

and (3) as a result, Textron's positive statements about Arctic Cat's business, operations, and

prospects lacked a reasonable basis.

## THE TRUTH EMERGES

28.     On October 18, 2018, Textron issued a press release announcing third quarter

2018 financial results, disclosing a surprise earnings miss.  The press release stated in relevant

part:

> Textron Inc. (NYSE: TXT) today reported third quarter 2018
> income from continuing operations of $2.26 per share, reflecting
> the gain on the sale of the Tools & Test product line of $1.65 per
> share, or $0.61 per share of adjusted income from continuing
> operations, a non-GAAP measure that is defined and reconciled to
> GAAP in an attachment to this release. This compares to $0.65 per
> share of adjusted income from continuing operations in the third
> quarter of 2017.
>
> "Revenues were lower in the quarter, largely reflecting declines at
> Industrial and Textron Systems," said Textron Chairman and CEO
> Scott C. Donnelly. "Operationally, we achieved margin
> improvements at Aviation and Bell, reflecting strong execution
> within those segments."
>
> ***

Textron now expects full-year 2018 GAAP earnings per share
from continuing operations will be in the range of $4.81 to $4.91,
or $3.20 to $3.30 on an adjusted basis (non-GAAP), which is
reconciled to GAAP in an attachment to this release.

The company reaffirms full-year manufacturing cash flow before
pension contributions (a non-GAAP measure) to be in a range of
$750 to $850 million.

29.     On that same day, during the Company's third quarter 2018 earnings conference

call with analysts and investors, the Company surprised investors and analysts with a sizable

missed earnings.  During the call, Defendant Donnelly stated in relevant part:

Well, look . . . I don't think this is a problem if - overall pricing in
the market so much, as **our team has been going through sort of
a painful learning experience about how that channel is
managed and how discounting is handled and how that plays
out through the course of the year**.

**So . . . it, for sure has manifested itself in more discounting
than we would like to continue to work that channel.** I think the
team will get better with that.  And it's things we're learning.  And
I think the team is going to make progress on it.  As we've talked
about before.  I think we were on the snow side; I'm a lot more
bullish.  I think we had some great product introductions last year
is that got the channel pretty excited.  We have a ton of new stuff
going in this year's, and we're – again, when you look at pre-
season sales activity and order activity, it's up.  Recognize that.
**On the dirt side, we missed a better part of last year because
some of the product that was sort of in the pipeline wasn't
really ready to go.  And we didn't want to release it till it was
ready, so we're kind of maybe a year behind in terms of the
new product feeding into that channel.  But those things, we're
introducing now**, so I think we'll start to see some momentum and
a little more excitement in the channel as we go forward.

But the bottom-line answer is I think the revenue number you're
talking about is probably consistent with where we'll end up this
year but we need to see more growth particularly through that
channel.

(Emphases added).

- 11 -

30.     On this news, Textron's stock fell $7.29 or 11.25 percent, to close at $57.49 on October 18, 2018, erasing $1.8 billion from its market capitalization.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

32.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

33.     The Individual Defendants permitted Textron to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's common stock.

34.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Textron, their control over, receipt, and/or modification of Textron's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Textron, participated in the fraudulent scheme alleged herein.

35.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Textron common stock by disseminating materially false and misleading statements and/or concealing material adverse

- 12 -

facts. The scheme deceived the investing public regarding Textron's business, operations, and management and the intrinsic value of Textron common stock and caused Plaintiff and members of the Class to purchase Textron common stock at artificially inflated prices.

### APPLICATION OF PRESUMPTION OF RELIANCE:
### <u>FRAUD ON THE MARKET</u>

36. Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) Textron common stock traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Textron common stock; and

(e) Plaintiff and other members of the Class purchased Textron common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

37. At all relevant times, the market for Textron common stock was efficient for the following reasons, among others:

(a) as a regulated issuer, Textron filed periodic public reports with the SEC; and

(b) Textron regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

- 13 -

(c)     Textron was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     Textron common stock is actively traded in an efficient market, namely the NYSE, under the ticker symbol "TXT."

38.     As a result of the foregoing, the market for Textron common stock promptly digested current information regarding Textron from publicly available sources and reflected such information in Textron's stock price.  Under these circumstances, all purchasers of Textron common stock during the Class Period suffered similar injury through their purchase of Textron common stock at artificially inflated prices and the presumption of reliance applies.

39.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

**LOSS CAUSATION/ECONOMIC LOSS**

40.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Textron common stock and operated as a fraud or deceit on Class Period purchasers of Textron common stock by misrepresenting the value of the Company's business and prospects as detailed herein.  As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Textron common stock fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases

- 14 -

of Textron common stock during the Class Period, Plaintiff and other members of the Class

suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and

conditions.  In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when

made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking

statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply

to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements were made, the

speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive

officer of Textron who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of all persons or entities who purchased or otherwise

acquired Textron common stock during the Class Period (the "Class").  Excluded from the Class

are Defendants, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in

which Defendants have or had a controlling interest.

- 15 -

43.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the Exchange Act was violated by Defendants as alleged herein;

(b)     whether statements made by Defendants misrepresented material facts about the business, operations and management of Textron; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

- 16 -

## COUNT I

**For Violations of § 10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Textron common stock during the Class Period.

51.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Textron common stock.  Plaintiff and the Class would not have purchased Textron common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

52.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Textron common stock during the Class Period.

## COUNT II

### For Violations of § 20(a) of the Exchange Act
### Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Textron within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about Textron, the Individual Defendants had the power and ability to control the actions of Textron and its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

- 18 -

      E.      Awarding such equitable/injunctive or other relief as deemed appropriate by the

Court.

<b><u>JURY DEMAND</u></b>

      Plaintiff demands a trial by jury.

DATED:  August 22, 2019              **LABATON SUCHAROW LLP**

                           */s/ Francis P. McConville*
                           Christopher J. Keller
                           Eric J. Belfi
                           Francis P. McConville
                           140 Broadway
                           New York, New York 10005
                           Telephone: (212) 907-0700
                           Facsimile: (212) 818-0477
                           Emails:    ckeller@labaton.com
                                     ebelfi@labaton.com
                                     fmcconville@labaton.com

                           *Attorneys for Plaintiff Building Trades*
                           *Pension Fund of Western Pennsylvania*

## CERTIFICATION

I, Norman Ringer, as Chairman of Building Trades Pension Fund of Western Pennsylvania ("Building Trades Western Pennsylvania"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Building Trades Western Pennsylvania.  I have reviewed a complaint prepared against Textron Inc. ("Textron") alleging violations of the federal securities laws;

2.      Building Trades Western Pennsylvania did not purchase common stock of Textron at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Building Trades Western Pennsylvania is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary;

4.      Building Trades Western Pennsylvania's transactions in Textron common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.      Building Trades Western Pennsylvania has not sought to serve as a lead plaintiff in any class action filed under the federal securities laws during the last three years;

6.      Beyond its pro rata share of any recovery, Building Trades Western Pennsylvania will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 21st day of August, 2019.

_Norman Ringer_
Norman Ringer
*Chairman*
*Building Trades Pension Fund of Western*
*Pennsylvania*

## EXHIBIT A

## TRANSACTIONS IN TEXTRON INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 08/06/18 | 1,200 | $66.91 | ($80,292.00) |
| Sale | 09/19/18 | -50 | $71.72 | $3,586.00 |