**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE TEXTRON, INC. SECURITIES LITIGATION | Case No.: 19-cv-07881-DLC<br><br>ECF Case |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**KIRKLAND & ELLIS LLP**
Sandra C. Goldstein, P.C.
Stefan Atkinson, P.C.
Kevin M. Neylan, Jr.
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
kevin.neylan@kirkland.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................. 1

I.      Plaintiff Has Not Pled Any False Or Misleading Statements. ............................................ 1

        A.      Textron's Inventory-Related Statements Were Not False or Misleading. .............. 1

        B.      Textron's Opinion and Future-Oriented Statements Are Not Actionable. ............. 5

        C.      Textron's Statements About Integration Are Not Actionable. ............................... 7

II.     Plaintiff's Scienter Allegations Are Deficient. ..................................................................... 9

Conclusion ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
  2009 WL 4823923 (S.D.N.Y. Dec. 14, 2009) .............................................................................4

*Bond Opportunity Fund v. Unilab Corp.*,
  87 F. App'x 772 (2d Cir. 2004) ...................................................................................................4

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014)........................................................................................................4

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
  2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015).............................................................................9

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
  2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ............................................................................7

*FHFA v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017)..........................................................................................................4

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018).........................................................................................8

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................................................9, 10

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
  2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019)............................................................................9

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
  Scot. Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015)........................................................................................................7

*In re IBM Corp. Sec. Litig.*,
  163 F.3d 102 (2d Cir. 1998)........................................................................................................5

*Lucescu v. Zafirovski*,
  2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018).............................................................................3

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).................................................................................................5, 10

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991)........................................................................................................4

*Oliver Wyman, Inc. v. Eielson*,
    282 F. Supp. 3d 684 (S.D.N.Y. 2017)........................................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)...................................................................................................1, 4, 6

*In re Razorfish, Inc. Sec. Litig.*,
    2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)........................................................................7, 8

*River Birch Capital, LLC v. Jack Cooper Holdings Corp.*,
    2019 WL 1099943 (S.D.N.Y. Mar. 8, 2019) ...............................................................................6

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................................4, 7

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,
    Inc.*,
    75 F.3d 801 (2d Cir. 1996).......................................................................................................4

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015)..........................................................................................6

*SEC v. Toomey*,
    866 F. Supp. 719 (S.D.N.Y. 1992).............................................................................................4

*Shemian v. Research In Motion Ltd.*,
    2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ...........................................................................10

*Stevelman v. Alias Research Inc.*,
    174 F.3d 79 (2d Cir. 1999).......................................................................................................10

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008).....................................................................................................10

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)........................................................................................10

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................................9

15 U.S.C. § 78u-5 ...................................................................................................................7

**INTRODUCTION**

Plaintiff has not stated a claim of securities fraud, and the Opposition ("Opp.") confirms it. When Textron acquired Arctic Cat in early 2017, Donnelly told the market that Arctic Cat had a backlog of unsold "older model" vehicles—meaning vehicles that were model year 2016 and older. Plaintiff's core allegation is that Donnelly exaggerated Textron's progress in selling those vehicles. That effort fails for a straightforward reason:  the Complaint alleges virtually nothing about how many MY 2016 and older vehicles were in Textron's inventory, either before or during the Class Period.  In other words, Plaintiff has provided no basis at all to conclude that Donnelly exaggerated Textron's progress in reducing MY 2016 and older vehicles, and hence no basis to conclude that Donnelly misled the market.  Trying to salvage its theory, Plaintiff now argues that—sometime in 2018—Donnelly told investors that Arctic Cat's inventory backlog had greatly expanded, and for the first time included not just MY 2016 and older vehicles, but also MY 2017 vehicles, of which Plaintiff claims Textron had several thousand.  But nothing Donnelly said supports this argument. As a result, Plaintiff's central allegation about Arctic Cat's inventory levels cannot support a claim.

The rest of Plaintiff's case attacks opinion statements that are protected under *Omnicare*, challenges vague remarks that are non-actionable puffery, and ignores other relevant disclosures. Meanwhile, Plaintiff's purported CIs—a handful of low-ranking employees—allegedly observed an assortment of issues that are in no way remarkable, and they cannot speak to what, if anything, was communicated to Donnelly and Connor.  The Complaint should be dismissed in its entirety.

**ARGUMENT**

**I.      PLAINTIFF HAS NOT PLED ANY FALSE OR MISLEADING STATEMENTS.**

**A.      Textron's Inventory-Related Statements Were Not False or Misleading.**

Before the acquisition in March 2017, Arctic Cat had a known inventory problem. Donnelly explained the nature of this problem in January 2017:  a buildup of unsold "older product

in the channel." (Ex. A at 10.)  Plaintiff does not dispute that every reasonable investor would have understood Donnelly to be talking about vehicles that were "older" as of January 2017, and hence were not the current model year, but were MY 2016 and older.  In April, July, and October 2017, Donnelly told investors that Textron was making progress toward resolving that "aged inventory" problem. (Ex. C at 12; *see* Ex. B at 9; Ex. D at 17.)  Plaintiff does not dispute that, like Donnelly's January 2017 statement, these later 2017 statements permit only one reasonable interpretation:  Textron had made progress in reducing the number of unsold MY 2016 and older vehicles that had built up in Arctic Cat's dealer channel before the acquisition. (*See* Opp. 17; MTD 8-9.)  Nor does Plaintiff allege that any of these positive 2017 statements were false or misleading.

Plaintiff's core allegation is that Donnelly exaggerated Textron's progress in resolving Arctic Cat's "aged inventory" problem when he addressed that topic in 2018.  The factual predicate for this argument is Plaintiff's allegation that, as of January 2018, Textron's Arctic Cat inventory included some 22,000 vehicles that were *MY 2017* and older. (SAC ¶ 78; *id.* ¶¶ 77, 83.)  Critically, however, Plaintiff does not dispute Textron's argument that nothing in the Complaint suggests even what rough fraction of those vehicles were MY 2016 and older—which means Plaintiff has provided no basis to conclude that Donnelly exaggerated Textron's progress in *reducing* MY 2016 and older vehicles. (MTD 9-10.)  Instead, Plaintiff has staked its inventory-related allegations on the argument that, in 2018, Donnelly told the market that the "aged inventory" problem had greatly expanded, and now included not just MY 2016 and older vehicles, but MY 2017 vehicles as well. (Opp. 17-18.)  Plaintiff's effort to read this transformation into Donnelly's statements fails.

Plaintiff first points to Donnelly's statement, in January 2018, that—during the fourth quarter of 2017—Arctic Cat "saw improved demand in the snow retail channel, allowing dealers to clear older inventory and drive 2018 model sales." (Ex. E at 4.)  Plaintiff asserts that this

statement "apparently includ[ed] 2017 models in the 'older' category." (Opp. 17.) That is false. Donnelly was describing reductions in "older inventory" that occurred *in 2017*, and nothing he said remotely suggests that he was suddenly describing a wider universe of vehicles than he had been describing consistently over the previous twelve months. Further, there is nothing strange in saying that clearing out 2016 and older inventory could help improve sales of 2018 vehicles.

Plaintiff next argues that "the important issue to Textron investors was whether a glut of inventory was hurting 2018 sales and margins." (Opp. 18.) Even if true, that implies nothing about the nature of the inventory glut, for again there is nothing odd about the idea that dealers could sell more 2018 vehicles if they cleared out 2016 and older inventory. Plaintiff also notes that one analyst asked about clearing aged inventory without referencing specific model years. (*Id.*) That does not change anything either, because—as Plaintiff evidently agrees—Donnelly spent 2017 describing the problem in terms of MY 2016 and older vehicles, and he "had no obligation to remind investors of information that was already publicly disclosed." *Lucescu v. Zafirovski*, 2018 WL 1773134, at *11 (S.D.N.Y. Apr. 11, 2018) (Cote, J.).

Finally, Plaintiff points to Donnelly's April 2018 statement that "you've got lower inventory of aged stuff and you've got a lot of exciting new stuff will be on the floors that dealers are pretty excited about." (Ex. G at 19; Opp. 18.) But nothing in that statement would even hint to a reasonable investor that the phrase "aged stuff" now meant something dramatically different than what it had meant for the past fifteen months. Moreover, Plaintiff ignores that, immediately before the statement Plaintiff quotes, Donnelly said that Textron "basically" had not sold any Arctic Cat vehicles—of any model year—so far in 2018. (Ex. G at 18.) Thus, when Donnelly referenced "lower inventory of aged stuff," he expressly said that it resulted from "inventory reductions that happened through the course of the year," *i.e.*, during 2017. (*Id.* at 18-19.)

In short, Donnelly's statements about inventory reduction—from 2017 through the Class Period—can only reasonably be understood as referring to reductions in the MY 2016 and older vehicles that Donnelly singled out as problematic before the acquisition.  Plaintiff's key factual allegation is therefore incapable of demonstrating fraud.  That is because Plaintiff's key factual allegation is that, as of January 2018, the dealer channel included some 22,000 vehicles *MY 2017 and older*.  (SAC ¶ 78; *id.* ¶¶ 77, 83.)  As discussed above, Plaintiff does not dispute Textron's argument that the Complaint fails to suggest even what ballpark fraction of those vehicles were MY 2016 and older—and as a result, the Complaint provides no basis to conclude that Donnelly exaggerated Textron's progress in *reducing* MY 2016 and older vehicles.  (MTD 9-10.)  Plaintiff can only speculate, but speculation is not good enough under the PSLRA and Rule 9(b).  *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004); *SEC v. Toomey*, 866 F. Supp. 719, 726 (S.D.N.Y. 1992); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 677 (2d Cir. 1991).  This is a securities fraud action that, like many others before it, must be dismissed because the plaintiff's factual allegations do not line up with, and hence do not negate, what the defendant actually said.  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996); *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 2009 WL 4823923, at *14 (S.D.N.Y. Dec. 14, 2009) (Cote, J.).[1]  That flaw is dispositive of Plaintiff's inventory-related allegations.

---

[1]  Plaintiff also suggests (without citation) that the meaning of Donnelly's statements "raise[s] questions of fact" about "what Defendants intended by their alleged misrepresentations."  (Opp. 17.)  That is wrong; "whether a statement is 'misleading' depends on the perspective of a reasonable investor:  The inquiry . . . is objective."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015).  Likewise, "[t]he falsity inquiry 'requires an examination of defendants' representations, taken together and in context.'"  *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 140 (2d Cir. 2017).  Donnelly's intent is not relevant to this issue.

Separately—and also independently—Plaintiff's inventory-related allegations cannot state a claim because they provide no basis to compare the number of unsold older vehicles that Textron inherited in the acquisition with the number of such vehicles that remained during the Class Period. Such a comparison is necessary for Plaintiff to "specify" and "explain" the "reason or reasons why" Donnelly's statements about inventory reductions were "misleading" and "fraudulent," as the PSLRA and Rule 9(b) require. (MTD 10-11.)  Plaintiff responds that Textron "never disclosed any of these numbers" (Opp. 18), but if Plaintiff's CIs are to be believed, they could have accessed those numbers easily (*see, e.g.*, SAC ¶¶ 82, 99), and yet the Complaint makes no effort of any kind to specify them.  Plaintiff also responds that "[t]he CI allegations of essentially static aged inventory levels . . . supports the claim that inventory had not been reduced significantly." (Opp. 18.)  But as Textron has pointed out, CI 2 is the only CI who alleges anything about inventory levels before the Class Period, and CI 2's allegations are internally contradictory and thus not entitled to the assumption of truth. (MTD 11.)  Plaintiff never responds to this argument.

Finally, Donnelly's statements about inventory reductions are "too indefinite to be actionable under the securities laws." *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 108 (2d Cir. 1998).  They are all rosy affirmations that are entirely non-specific about Textron's progress.  This is a third independent reason why Plaintiff's allegations about inventory cannot support a claim.[2]

### B.    Textron's Opinion and Future-Oriented Statements Are Not Actionable.

The law is clear that Donnelly stated an opinion when he said, for instance, "*I think* we are seeing profit improvement at Arctic Cat," and "*I think* the end market of all the data I see is positive here in the last couple months" (Ex. I at 19 (emphasis added)), and when he predicted that Arctic Cat was "going to hit the target of being accretive this year" (Ex. E at 27).  So, too, for

---

[2] *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000), is not to the contrary.  *Novak*'s very short puffery analysis stressed that the defendants had actual knowledge that their statements were false.  *Id.*  That is not the case here.

similar statements about what Donnelly "expect[ed]." (*See* MTD 12-13); *Omnicare*, 575 U.S. at 183-84, 187-88; *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 531 (S.D.N.Y. 2015).

Nothing in the Complaint renders these opinion statements actionable. Plaintiff's belated assertion that "Defendants did not believe" their opinions, "as demonstrated by" their stock sales (Opp. 20), is irrelevant because this allegation is not in the Complaint, *River Birch Capital, LLC v. Jack Cooper Holdings Corp.*, 2019 WL 1099943, at *6 n.1 (S.D.N.Y. Mar. 8, 2019), and it is wrong in any event. Stock sales at most can provide circumstantial support for an allegation that a defendant had a *motive* to mislead investors, but that is not the same as alleging that the defendant subjectively disbelieved his or her opinions. Tellingly, Plaintiff cites nothing in support of this argument. Plaintiff also argues, relying on *Omnicare*, that these opinion statements "did not 'fairly align[] with the information in [Donnelly or Connor's] possession at the time.'" (Opp. 20.) This argument fails for two reasons. First, none of Plaintiff's CIs was in a position to know what Donnelly or Connor subjectively knew at the time they spoke—a point Plaintiff never disputes— as this prong of *Omnicare* requires. 575 U.S. at 188-89. Second, "[a]n opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Id.* at 189. As a result, none of these opinion statements can support a claim.[3]

Independently, these statements are non-actionable under the PSLRA's safe harbor. (MTD 13-14.) Plaintiff offers three responses, but none succeeds. First, Plaintiff argues that the safe harbor is inapplicable because these statements are "mixed statements of present or historical fact." (Opp. 21.) That is not true; Donnelly made a prediction when he said that Arctic Cat would likely be "accretive" in 2018 (Ex. E at 27), that he would "expect to see" improving profit margins and "positive progression" in 2018 (Ex. I at 19), and that Textron would likely not record an

---

[3] These opinions also do not have any "embedded statements of fact," which occurs when a speaker makes a factual assertion that stands apart from the statement describing what he or she believes. *Omnicare*, 575 U.S. at 185.

impairment charge (Ex. K at 21). Plaintiff then argues that the risks Textron warned about had already materialized. (Opp. 21.) But this exception does not apply here for the reasons explained in *Rombach*: a company of Textron's size "is bound to have problems" like the operational difficulties alleged in the Complaint, and indeed "the allegations in the complaint are consistent with unremarkable circumstances short of financial peril or instability." 355 F.3d at 173-74. Finally, Plaintiff asserts that the safe harbor is off limits because "Defendants knew or recklessly disregarded that their statements were false or misleading when made." (Opp. 21.) This argument fails because recklessness does not suffice to defeat the safe harbor; Plaintiff must plead that Donnelly or Connor had "*actual knowledge*" that their statements were false or misleading. 15 U.S.C. § 78u-5(c)(1)(B)(ii)(II) (emphasis added). Plaintiff's CIs cannot show recklessness, and they do not even purport to speak to Donnelly or Connor's actual knowledge.

### C.    Textron's Statements About Integration Are Not Actionable.

Plaintiff's attempt to rehabilitate its integration-related allegations comes up short. Donnelly's comment on the January 31, 2018 earnings call, that "we successfully integrated the integration of Arctic Cat" (Ex. E at 5), is plainly not actionable. Plaintiff again tries to brush aside other comments Donnelly made during the same call. But Donnelly said "our integration of Arctic Cat continues," and (about Textron Specialized Vehicles more generally) "there's obviously still work to do in finishing the integration." (*Id.* at 4, 21.) No reasonable investor could have listened to all that and heard "mission accomplished." (SAC ¶ 72.) Moreover, Plaintiff has no answer to the on-point precedent that makes clear that the quote Plaintiff has cherry picked—even considered by itself—is puffery or permissible optimism. *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015); *Rombach*, 355 F.3d at 172, 174; *In re Razorfish, Inc. Sec. Litig.*, 2001 WL 1111502, at *1-2 (S.D.N.Y. Sept. 21, 2001); *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *12 (S.D.N.Y. Mar. 30,

7

2018).  Plaintiff asserts, in one sentence, that those cases are different.  (Opp. 23.)  But as Textron

discussed at length (MTD 15-16), there is *no* meaningful difference between Donnelly's comment

and the integration-related remarks the Second Circuit and this Court have repeatedly held are non-

actionable.  Simply put, "'integration' is far too loose and uncertain a term on which to premise a

claim of securities fraud." *Razorfish*, 2001 WL 1111502, at *2.  Nothing here changes that result.[4]

Trying to avoid this outcome, Plaintiff again insists that Textron articulated concrete

integration objectives, but this effort is even less convincing now than it was before.  First, the

Complaint alleges that "combining . . . dirt vehicles production facilities" was one such objective

(SAC ¶ 55), but as Textron pointed out, Plaintiff does not allege that these facilities were *not*

combined (MTD 16), and when pressed to identify the allegedly misleading statement on this

subject, Plaintiff now points to a remark from 2017 that is not one of the statements challenged in

the Complaint, that predates the Class Period by six months, and that is not even clearly about

combining dirt production facilities.  (Opp. 24.)  As for the second alleged objective, "combining

Arctic Cat's . . . 800 dealers with TSV's dealers" (SAC ¶ 55), that *did* happen.  Plaintiff's gripe is

difficult to understand; it now appears to be that Textron should have started terminating

unprofitable dealers earlier than summer 2018.  (Opp. 24.)  But Textron said nothing about the

timing of dealer terminations, so this allegation cannot render any statement false or misleading.

Finally, Plaintiff again highlights the 2017 10-K's statement that Textron would invest

$40 million in "a restructuring plan" whose goal was "to integrate [Arctic Cat] . . . and reduce

operating redundancies and maximize efficiencies."  (Ex. F at 20.)  The 10-K and later 10-Qs said

this plan was "substantially completed with the majority of the remaining cash outlays . . . expected

---

[4] Even *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303 (S.D.N.Y. 2018), the lone in-Circuit case Plaintiff cites (Opp. 23), recognized that "barebones references to corporate synergies" would be non-actionable, which is akin to Donnelly affirming, without more, that "we successfully integrated the integration of Arctic Cat."

to be paid in the remainder of 2018." (Ex. F at 63; Ex. H at 17; Ex J at 18.)  Plaintiff never disputes that Textron invested the $40 million as promised.  Plaintiff instead alleges that "operating redundancies" were not "reduce[d]" and "efficiencies" were not "maximize[d]."  (*See* Opp. 25.) But even if the 10-K and 10-Qs could be read to say that Textron was nearly done reducing redundancies and maximizing efficiencies—which is not a reasonable reading, as Textron explained (*see* MTD 17-19)—those sorts of "generic . . . corporate platitudes" about "corporate health" are textbook "non-actionable puffery." *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 702 (S.D.N.Y. 2017); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 2019 WL 4601644, at *13 (S.D.N.Y. Sept. 23, 2019); *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *13 (S.D.N.Y. Aug. 19, 2015) (collecting cases).

## II.    PLAINTIFF'S SCIENTER ALLEGATIONS ARE DEFICIENT.

Plaintiff has not met its burden to create a "strong inference" of scienter, at least "with respect to" the statements in January, February, and October 2018.  15 U.S.C. § 78u-4(b)(2)(A).

***First*,** Plaintiff cannot plead scienter by relying on its purported CIs.  Plaintiff does not dispute that none of its CIs was in a position to know what Donnelly or Connor was told about Arctic Cat inventory levels at any time, and especially not in January 2018.  (MTD 22-23.)  The same is true for the hodgepodge of routine operational issues alleged in the Complaint.  (MTD 24-25.)  Plaintiff simply ignores the many cases holding that, to plead scienter by relying on CIs, "a plaintiff must . . . allege that 'the confidential sources would have known what information was communicated to senior executives.'" *AMC Entm't*, 2019 WL 4601644, at *17; *see also, e.g.*, *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589-91 (S.D.N.Y. 2011) (collecting cases).

Instead, Plaintiff asks the Court to *infer* scienter because the alleged operational issues were "red flags." (Opp. 12-14.)  But these allegations describe routine operational issues, and there is no reason to think Textron's top executives should have known of them.  (MTD 24.)  Moreover,

9

Plaintiff's argument for an "inference" of scienter is just a vague attempt to invoke the "Core Operations" theory of scienter. *See Shemian v. Research In Motion Ltd.*, 2013 WL 1285779, at *17 (S.D.N.Y. Mar. 29, 2013). This theory, however, predates the PSLRA and should no longer be applied. *Id.* at *18. It would not apply here anyway because Arctic Cat's operations would need to "constitute nearly all of [Textron's] business." *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011). Yet the Complaint does not (and could not) allege anything close.[5]

**Second**, the Court should reject Plaintiff's motive allegations for the January, February, and October statements. The only support Plaintiff offers are stock sales from April 27 to May 1, and on July 27. The January and February statements are too attenuated—and would improperly dilute the pleading standard—at least without an allegation that such trades were planned that far in advance. (MTD 21-22.) Plaintiff's response proves the point. Plaintiff argues that in January and February, Donnelly and Connor would have been motivated to "maintain[] Textron's share price" (Opp. 12), but as the Second Circuit has held, this motive is too commonplace to suffice. *Novak*, 216 F.3d at 307. As for the October statement, which took place months after the trades, the inference of motive is far too weak, and *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999), is not to the contrary. That case said that trades could be "probative" of motive for statements made later, not that such trades would suffice. *Id.* Because the Complaint alleges nothing else to support scienter for the October statement (MTD 25), the scienter allegations fail.[6]

### CONCLUSION

Textron's motion to dismiss should be granted with prejudice.

---

[5] Plaintiff also mentions Holleran's departure (Opp. 15), but this fact is irrelevant, for nothing in the Complaint suggests that it was "highly unusual and suspicious." *Glaser*, 772 F. Supp. 2d at 598. Similarly, invoking "the magnitude of the earnings miss" (Opp. 14) is just an attempt to plead fraud by hindsight. *Novak*, 216 F.3d at 309.

[6] Plaintiff's discussion of "corporate scienter" is misplaced. (Opp. 14-15.) The Complaint "must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Because only Donnelly and Connor took the "culpable act[s]" alleged here, only their mental states can support a claim against Textron. *Id.*

Dated:  New York, New York
        April 10, 2020

*/s/ Sandra C. Goldstein*

Sandra C. Goldstein, P.C.
Stefan Atkinson, P.C.
Kevin M. Neylan, Jr.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
kevin.neylan@kirkland.com

*Counsel for Defendants*

11