**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Textron Inc. Securities Litigation | CASE NO.: 1:19-CV-7881-DLC |

**LEAD PLAINTIFF'S CORRECTED MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

HISTORY OF THE LITIGATION .......................................................................................... 2

THE PROPOSED SETTLEMENT ........................................................................................... 4

ARGUMENT ............................................................................................................................... 5

I.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................. 5

    A.   Lead Plaintiff and Lead Counsel Have Ably and Zealously Represented the Class ............................................................................................................ 6

    B.   Arm's-Length Negotiations Conducted by Experienced Lead Counsel Favor Preliminary Approval ...................................................................................... 7

    C.   The Settlement Provides a Substantial Recovery That is Adequate Under All of the Rule 23(e)(C) Factors ........................................................................... 9

        1.   The Costs, Risks, and Delay of Trial and Appeal ...................................... 10

        2.   The Effectiveness of The Proposed Method of Distributing Relief to The Class ........................................................................................... 11

        3.   The Proposed Attorneys' Fees Are Reasonable ........................................ 12

    D.   The Settlement Treats Settlement Class Members Equitably Relative to One Another ......................................................................................................... 13

II.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ......................................................................................................................... 14

    A.   The Settlement Class Meets the Requirements of Rule 23(a) ............................. 15

        1.   Rule 23(a)(1): Numerosity ........................................................................ 15

        2.   Rule 23(a)(2): Commonality ...................................................................... 16

        3.   Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ................................. 17

        4.   Rule 23(a)(4): Lead Plaintiff Is Adequate ............................................... 18

    B.   The Settlement Class Meets the Requirements of Rule 23(b) ............................. 19

   1. Common Questions of Law or Fact Predominate ..................................... 19

   2. A Class Action Is a Superior Method of Adjudication ............................ 20

  C. Kaplan Fox Should Be Appointed Class Counsel ................................................ 22

III. THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED ............ 23

IV. PROPOSED SCHEDULE OF EVENTS ......................................................................... 24

V. CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................ 14, 19

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ................................................................................................ 20

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  No. 10 Civ. 4825 (JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)........................................ 5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................ 11, 20

*Central States Southeast & Southwest Areas Health & Welfare Fund*
  *v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007)........................................................................................ 15

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)........................................................................................ 15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)........................................................................................ 7, 8

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................ 6

*Fogarazzo v. Lehman Bros. Inc.*,
  No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................................ 12

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................ 8, 12

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................................ 10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................ 5

*In re AOL Time Warner, Inc.*,
  No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................ 10

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ........................................................................................ 22

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992).............................................................................................. 18

*In re Dynex Capital, Inc. Sec. Litig.*,
  No. 05 Civ. 1897 (HB), 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ..................................... 19

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)................................................................................. 8

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................ 7

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ...................................................................................... 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................... 12

*In re Globalstar Sec. Litig.*,
  No. 01 Civ 1745 (PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ................................... 16

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................... 5, 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04-cv-8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................... 15, 17, 18, 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ....................................................................................... 9

*In re Merrill Lynch Tyco Research Sec. Litig.,*
  249 F.R.D. 124 (S.D.N.Y. 2008) ...................................................................................... 13

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ................................................................................. 15, 21

*In re OCA, Inc. Securities and Derivative Litig.*,
  No. 05-cv-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008)............................................. 22

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................ 16, 17, 18

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) ....................................................................................... 9

iv

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................................... 18

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................. 14

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................. 15

*In re Take Two Interactive Sec. Litig.*,
  No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010).......................... 23, 24

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................... 22

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
  No. 03 Civ. 8284 (S.D.N.Y. Dec. 7, 2006) .............................................................. 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .......................................................................... 15, 17

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................... 12

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995).................................................................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)................................................................................................ 23

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)................................................................................... 10

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).............................................................................. 15, 17

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................... 10

*Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.,*
  No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .................... 17

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017).................................. 9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)............................................................................................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................... 5, 7

*Weinberger v. Kendrich*,
   698 F.2d 61 (2d Cir. 1982)...................................................................................... 14

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................................. 13

15 U.S.C. §78u-4(a)(7)(A)-(E) ................................................................................. 24

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 1, 2, 6

Fed. R. Civ. P. 23(a) ................................................................................. 14, 15, 19, 22

Fed. R. Civ. P. 23(a)(1).............................................................................................. 15

Fed. R. Civ. P. 23(a)(2).............................................................................................. 16

Fed. R. Civ. P. 23(a)(3).......................................................................................... 17, 18

Fed. R. Civ. P. 23(a)(4).............................................................................................. 18

Fed. R. Civ. P. 23(b) ............................................................................................. 19, 22

Fed. R. Civ. P. 23(b)(3).................................................................................... 14, 19, 20

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................................. 21

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 23

Fed. R. Civ. P. 23(c)(3).............................................................................................. 23

Fed. R. Civ. P. 23(e) ............................................................................................... 1, 5

Fed. R. Civ. P. 23(e)(1)(B)(i)....................................................................................... 5

Fed. R. Civ. P. 23(e)(2)............................................................................................ 5, 6

Fed. R. Civ. P. 23(e)(3)............................................................................................ 6, 9

Fed. R. Civ. P. 23(e)(C) .............................................................................................. 9

Fed. R. Civ. P. 23(g) .................................................................................................. 22

Fed. R. Civ. P. 23(g)(1)(A)................................................................................... 19, 22

**Other Authorities**

7 Newberg on Class Actions § 22:63 (5th ed.) .............................................................. 15

Lead Plaintiff IWA Forest Industry Pension Plan ("Lead Plaintiff"), on behalf of itself and all other members of the Settlement Class, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") filed herewith.[1]

## PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action ("Action") for a value of Seven Million Nine Hundred Thousand Dollars ($7,900,000.00) (the "Settlement"). If approved by the Court, the Settlement will resolve all claims asserted against Defendants in the Action and any related claims. Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval because it represents a very favorable recovery for the Settlement Class, that is the result of vigorous arm's-length negotiations by experienced counsel, overseen by a well-respected mediator, and it is very likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent.

Entry of the Preliminary Approval Order (Ex. 1-A) will begin the process of considering final approval of the Settlement by authorizing notice of the Settlement to investors who are believed to be members of the Settlement Class. The Preliminary Approval Order will also set a final hearing ("Settlement Fairness Hearing") at which the Parties and Settlement Class Members may present arguments against the Settlement, and the Court can determine whether the Settlement is fair, reasonable, and adequate, and warranting final approval.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement, dated June 23, 2022 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Frederic S. Fox ("Fox Decl."). All exhibits referenced below are attached to the Fox Declaration unless otherwise indicated.

To facilitate this process, the Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation (Ex. 1); (ii) approve the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits A-(i), A-(ii), and A-(iii) to the Preliminary Approval Order; (iii) find that the proposed procedures for dissemination of the Notice, Claim Form, and Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) preliminarily certify the Settlement Class, appoint Lead Counsel as Class Counsel and Lead Plaintiff as Class Representative; and (v) set a date and time for the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, Class Certification, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiff pursuant to the PSLRA.

## HISTORY OF THE LITIGATION

Lead Plaintiff alleged that Textron, Inc. ("Textron" or the "Company"), Scott C. Donnelly and Frank T. Connor (collectively "Defendants") violated the federal securities laws by misrepresenting and omitting material information concerning an oversupply of aged Arctic Cat inventory that required steep discounting to motivate sales, causing substantial losses during the Class Period. Lead Plaintiff alleged that these misrepresentations and omissions caused the price of Textron's publicly-traded common stock to be artificially inflated during the Class Period, causing Lead Plaintiff's and the class's damages.

This securities fraud class action was commenced with the filing of a complaint on August 22, 2019. ECF No. 1. Following briefing, on November 13, 2019, the Court appointed IWA as Lead Plaintiff for the proposed class and approved Lead Plaintiff's selection of Kaplan Fox & Kilsheimer LLP as Lead Counsel pursuant to the PSLRA. ECF No. 34.

2

On behalf of the class, Lead Counsel conducted a thorough and far-reaching investigation to support the allegations in the Complaint. This process included analyzing: (i) documents filed publicly by the Company with the Securities and Exchange Commission ("SEC"); (ii) publicly available information and data, including press releases, news articles, and other public statements issued by or concerning Textron; (iii) research reports issued by financial analysts concerning the Company; and (iv) the applicable law governing the claims and potential defenses. Additionally, Lead Counsel identified and interview former Textron employees with relevant knowledge of the claims alleged. Lead Counsel also consulted with experts on damage calculations and related issues.

The operative complaint in the Action, the Second Amended Consolidated Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), was filed on February 14, 2020. ECF No. 39. The Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. On March 6, 2020, Defendants moved to dismiss the Complaint (ECF Nos. 41-43), which Lead Plaintiff opposed on March 27, 2020 (ECF Nos. 44). On April 10, 2020, Defendants filed a reply in further support of their motion. ECF No. 46. On July 20, 2020, the Court granted Defendants' motion to dismiss in its entirety and entered judgement in favor of Defendants. ECF No. 50.

On August 18, 2020, Lead Plaintiff filed a Notice of Appeal of the Court's July 20, 2020 Order and Judgment.  On November 30, 2020, Lead Plaintiff filed its brief in support of the appeal. On March 1, 2021, Defendants filed an opposition and on March 22, 2021 Lead Plaintiff filed its Reply. On September 17, 2021, the United States Court of Appeals for the Second Circuit issued an Opinion Vacating and Remanding the Action as to the inventory related statements only, and affirming the Court's dismissal of all remaining allegations.

3

On November 9, 2021, the Court entered a Pretrial Scheduling Order including a schedule for discovery and private mediation. (ECF No. 60). The Parties agreed to discuss a possible early resolution of the Action. To facilitate that discussion, Defendants and Lead Plaintiff produced, on an expedited basis, certain documents related to the claims and defenses. Additionally, the Parties engaged Greg Danilow, Esq. of Phillips ADR, a respected and highly experienced mediator, to assist in their discussions of a potential negotiated settlement.

## THE PROPOSED SETTLEMENT

On March 11, 2022, Lead Plaintiff and Defendants met remotely with Mr. Danilow for a full-day mediation session. Despite extended negotiations, which were preceded by the exchange of detailed mediation statements, a settlement was not reached. The Parties continued negotiating with the assistance of Mr. Danilow over the course of the following two months, and finally executed a term sheet on May 5, 2022 setting forth the material terms of their agreement (the "Term Sheet") to resolve the matter for a total value of Seven Million Nine Hundred Thousand Dollars ($7,900,000.00).  The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement.[2]

In light of the significant benefit achieved for the Settlement Class; the substantial costs and risks of continuing litigation through the completion of discovery, class certification, summary judgment, trial, and appeals; and the fact that the Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator; Lead Counsel

---

[2] In connection with the Settlement, the Parties have also entered into the confidential Supplemental Agreement regarding requests for exclusion, dated June 23, 2022 ("Supplemental Agreement"). *See* Stipulation ¶ 35. The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental Agreement ("Opt-Out Threshold"). As is standard practice in securities class actions, the Supplemental Agreement is not being made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

respectfully submits that the Settlement warrants preliminary approval so that notice of the Settlement can be provided to the Settlement Class.

**ARGUMENT**

I.      **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted). Thus, the procedural and substantive fairness of a settlement should be examined "in light of the strong judicial policy in favor of settlement of class action suits." *Aponte v. Comprehensive Health Mgmt., Inc.,* No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *2 (S.D.N.Y. Apr. 2, 2013) (quotation omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  The review is a two-step process: (i) preliminary approval; and (ii) a subsequent "fairness hearing." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). In weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court ***will likely be able to*** . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B)(i).[3] Rule 23(e)(2) provides that a court should consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

---

[3] All emphasis added unless otherwise noted.

(A) the class representative and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4]

In accordance with the above standards, Lead Plaintiff requests that the Court grant preliminary approval because the Settlement is highly likely to satisfy all of the factors required for final approval.

### A.   Lead Plaintiff and Lead Counsel Have Ably and Zealously Represented the Class

Lead Plaintiff and Lead Counsel have zealously prosecuted this Action on behalf of the Settlement Class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. Lead Plaintiff was an active and informed participant in the litigation who, among other things, reviewed and approved draft filings including the lead plaintiff motion, the Complaint, and briefing in opposition to Defendants' motion to dismiss, it stayed informed of all case developments, and oversaw and consulted repeatedly with Lead

---

[4] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Counsel regarding settlement negotiations. Lead Plaintiff understood both the Settlement Class's and Defendants' best arguments concerning liability, damages, and the risks of proceeding with the Action, and approved the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and extensive court and public records ; (ii) briefing on Defendants' motion to dismiss and the subsequent appeal; (iii) engaging in preliminary discovery efforts and document review; and (iv) working with experts in damages and loss causation issues. In consultation with its damages experts, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $7.9 million recovery. Accordingly, the Settlement Class has been, and remains, well represented.

**B.      Arm's-Length Negotiations Conducted by Experienced Lead Counsel Favor Preliminary Approval**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (same). The use of a mediator in settlement negotiations further supports this presumption of fairness and the conclusion that the settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Flag Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended

7

mediation."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (applying the presumption of fairness where the settlement was "the product of extended 'arm's length' negotiations").

The Settlement results from extensive, arms' length negotiations conducted by experienced counsel for all parties, with the assistance of the independent mediator Greg Danilow of Phillips ADR. The Parties each submitted written statements to Mr. Danilow, briefing him on relevant facts and legal issues, and a full-day remote mediation session took place on March 11, 2022. During the mediation, the Parties discussed their respective views regarding the merits of the Action, including the evidence adduced, Defendants' defenses, and issues relating to damages. Although the Parties were unable to reach an agreement in the initial mediation session, after two months of further negotiations, they agreed in principle to settle this Action as to all Defendants and all claims for the Settlement Amount.

The use of mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Indeed, Mr. Danilow has served as the mediator in multiple cases that were approved by courts. *See In Re Evoqua Water Technologies Corp. Securities Litigation*, 18-cv-10320-JPC, (S.D.N.Y.) and *In Re Vivint Solar, Inc. Securities Litigation*, 20-cv-00919-JNP-CMR, (D. Utah).

Moreover, in evaluating the Settlement, the Court should consider the judgment of Lead Counsel. *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("Where counsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned . . . counsel's judgment is entitled to great

weight.") (internal quotations omitted).[5] Here, Lead Counsel is a leading securities class action litigation firm with decades of experience in the practice area, and was well-informed of the risks and merits of the case prior to reaching the proposed Settlement.[6] Accordingly, Lead Counsel's judgment that the Settlement is in the best interest of the Settlement Class should be given weight.

C.    **The Settlement Provides a Substantial Recovery That is Adequate Under All of the Rule 23(e)(C) Factors**

Rule 23(e)(C) requires the Court to consider whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorney's fees.[7] All of these factors support preliminary approval here.

Based on Lead Plaintiff's consulting expert's estimate of aggregate damages, the Settlement Amount represents a recovery of 9% of the Settlement Class's damages—a very favorable recovery under any circumstances. This percentage of recovery is well above the recovery range of settlements that have received approval within this District. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

---

[5] *See also, In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[6] *See* Ex. 2 (Kaplan Fox firm resume).

[7] Additionally, all agreements required to be disclosed under Rule 23(e)(3) have been disclosed.

Although Lead Plaintiff and Defendants disagree about the amount of maximum recoverable damages, the $7.9 million Settlement Fund is a substantial recovery regardless of which Party's damages metric is used. Moreover, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). Additionally, the Court should consider that the Settlement provides for payment to the Settlement Class now rather than a speculative payment many years later. *See In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006).  Here, Lead Plaintiff faced numerous legal, procedural, and practical hurdles, including issues related to loss causation, that, if not met or overcome, could result in zero recovery for Lead Plaintiff and the Settlement Class. Thus, the Settlement Amount is reasonable.

### 1. The Costs, Risks, and Delay of Trial and Appeal

The costs, risks, and delay of succeeding at trial and on appeal weigh strongly in favor of preliminary approval of the Settlement.

Without the Settlement, the Parties faced the certainty that further litigation would be expensive, complex, and time consuming. There can be no doubt that litigating this Action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals would be time consuming and expensive. Here, the Settlement provides a substantial cash benefit to the Settlement Class without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was

10

willing to assume all the risks of [Litigation]…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

Additionally, although Lead Plaintiff is confident in the merits of his claims and believes that substantial evidence supporting the allegations has been adduced, it also recognizes that the Action presented many risks to achieving class certification and establishing both liability and damages. At the class certification stage, Defendants would have likely argued that the market for Textron stock was inefficient during the Class Period and that reliance could not be presumed under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) meaning that individual issues would predominate over common ones, precluding class certification.

Lead Plaintiff also would have confronted considerable challenges in establishing loss causation and damages. In particular, Defendants would have argued that Textron's stock price declines on the alleged corrective disclosure dates were caused, in whole or substantial part, by factors unrelated to the alleged fraud. If any of these arguments prevailed at class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.

### 2. The Effectiveness of The Proposed Method of Distributing Relief to The Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their

respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stip. ¶ 20 (Ex. 1). Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶ 24. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶ 31) and the claims process is completed, Lead Plaintiff will seek Court approval to distribute the Net Settlement Fund. If approval is granted, Authorized Claimants will be issued payments as described in the Stipulation. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of the remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). After all distributions, if there are unclaimed funds, Lead Plaintiff will request Court approval of a *cy pres* beneficiary. Notice at ¶ 65 (Ex. 1-A-1).

### 3.    The Proposed Attorneys' Fees Are Reasonable

Lead Counsel will request compensation from the Settlement Fund under the common fund doctrine. The Stipulation provides that Lead Counsel will seek a fee of 25% of the Settlement Fund, an amount that is well within or below the percentages that courts in the Second Circuit have approved in comparable class actions. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (granting fee of 33.33% of $7.5 million settlement); *Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194, 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip. op. at 2 (S.D.N.Y. Dec. 7, 2006) (awarding 33 1/3% of $8 million settlement) (ECF No. 45); *Maley v. Del*

*Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding fee of 33.33% of the settlement). Approval of the attorneys' fees sought is not a condition of the Settlement.

In addition, Lead Counsel will seek payment of Litigation Expenses incurred during the prosecution of the Action, in an amount not to exceed One Hundred Twenty-Five Thousand Dollars ($125,000). As will be detailed in Lead Counsel's final approval papers, these expenses were necessary and proper for the prosecution of the Action, and are well within the types and amounts of expenses commonly granted.

**D.    The Settlement Treats Settlement Class Members Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any portion of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[8] The proposed plan was created by Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theory of damages under the Exchange Act. All Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. Notice at ¶¶ 61-66 (Ex. 1-A-1). *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

---

[8] Lead Plaintiff will seek reimbursement of its reasonable costs and expenses pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

## II.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

The Parties have stipulated that the Court may certify the Settlement Class for the purposes of the Settlement and appoint Lead Plaintiff as the Class Representative and Lead Counsel as the Class Counsel.  *See* Stip. ¶ 3 (Ex. 1). The Settlement Class is defined as "all persons or entities who purchased or otherwise acquired Textron common stock on the NYSE or other U.S. exchanges or in a U.S. transaction between January 31, 2018 and December 6, 2018, inclusive." *Id*. at ¶ 1(oo).[9]

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir. 1982). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). A party seeking class certification must first show that the class action satisfies the following four prerequisites set forth in Rule 23(a): (i) numerosity; (ii) commonality of questions of law or fact; (iii) typicality of the named plaintiff's claims and defenses; and (iv) the adequacy of the named plaintiff. *See* Fed. R. Civ. P. 23(a). Additionally, the party must show that the predominance and superiority requirements of Rule 23(b)(3) are met. However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem*, 521 U.S. at 620 ("a district court need

---

[9] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person  who was an officer or director of Textron during the Class Period;  (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Textron's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

14

not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Courts have generally found securities claims to be particularly well-suited for class action treatment because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008); *see also*, 7 Newberg on Class Actions § 22:63 (5th ed.). This Action is no exception.

### A.    The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. For purposes of Rule 23(a)(1), however, "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-245 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In order to satisfy Rule 23(a)(1), it is not necessary that the precise number of class members be known, and in "securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *accord In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

15

Here, purchasers of Textron stock during the Class Period are believed to number in the thousands and are geographically located throughout the United States, thus making joinder impracticable. Textron's common stock was listed and actively traded on the NYSE during the Class Period. As of the October 12, 2018, Textron had 242 million shares outstanding. *See* Complaint ¶181. Thus, the numerosity requirement is easily met.

### 2.   Rule 23(a)(2): Commonality

The commonality requirement is satisfied where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551.

Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01 Civ 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the Complaint alleges a fraud perpetrated against all investors during the Class

16

Period, with numerous questions of law and fact common to all Settlement Class Members. Common questions include: (a) whether the federal securities laws were violated by Defendants' alleged acts; (b) whether the press releases and other public statements disseminated to the investing public during the Class Period contained material misstatements or omitted to state material information; (c) whether Defendants acted with scienter; (d) whether the prices of Textron stock during the Class Period were artificially inflated due to the alleged material omissions and misrepresentations; and (e) whether Settlement Class Members have sustained damages and, if so, what is the appropriate measure of damages.

### 3.     Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3), the typicality requirement, is satisfied when a plaintiff shows that "the claims of the named plaintiffs arise from same practice or course of conduct that gives rise to the claims of the proposed class members." *Vivendi*, 242 F.R.D. at 85 (citation omitted); *see Oxford Health Plans*, 191 F.R.D. at 375. "Typical" does not mean "identical." *See Marsh & McLennan*, 2009 WL 5178546, at *10. The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions. *See Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.,* No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met…")

17

Here, Lead Plaintiff's claims, legal theories and evidence are identical to those of other members of the Class. It, like all members of the Settlement Class, purchased Textron's stock at allegedly artificially inflated prices during the Class Period and suffered damages because of Defendants' alleged material misstatements and omissions. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    Rule 23(a)(4): Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the claims of the lead plaintiff conflict with those of the class; and (2) whether the lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans,* 191 F.R.D. at 376.

Here, Lead Plaintiff's interests are coextensive with those of other Settlement Class Members. Like all members of the Settlement Class, Lead Plaintiff has claims under the federal securities laws against the Defendants in connection with his purchase of Textron stock during the Class Period. Lead Plaintiff, like all Settlement Class Members, was also allegedly injured by Defendants' allegedly wrongful acts. Proof of Lead Plaintiff's claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Lead Plaintiff and the class it seeks to represent have the same interests in recovering damages allegedly caused by Defendants' wrongful conduct. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

18

Lead Plaintiff also respectfully submits that it has retained counsel who are qualified, experienced and fully capable of prosecuting this litigation on behalf of the Class. Kaplan Fox has a proven track record in the prosecution of complex class actions, both in this judicial district and nationwide. *See* Ex. 2 (firm resume). Through their efforts in this litigation, Kaplan Fox has obtained a settlement of $7.9 million for the benefit of the Settlement Class, a very substantial percentage of the alleged damages Lead Plaintiff sought to prove. Lead Plaintiff, therefore, satisfies the Rule 23(a) adequacy requirements.[10]

### B.    The Settlement Class Meets the Requirements of Rule 23(b)

Next, at least one of the three conditions imposed by Rule 23(b) must be satisfied. Lead Plaintiff respectfully submits that Rule 23(b)(3) is satisfied here, because: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Supreme Court has expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id*. at 625. "Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof." *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 WL 781215, at *3 (S.D.N.Y. Mar. 7, 2011). In evaluating predominance, the Court's inquiry "must be rigorous and may entail some overlap with the merits

---

[10] Lead Plaintiff also respectfully request that the Court-appointed Lead Counsel, Kaplan Fox, be appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1)(A).

19

of the [P]laintiffs' underlying claim," but the Court may not "engage in free-ranging merits inquiries at the class certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).

In this Action, as is generally so in securities class actions, each element of Lead Plaintiff's 10(b) claim involves common questions of law and fact because the same set of operative facts applies to each Settlement Class Member. Specifically, common questions include whether the shares of Textron stock purchased and/or acquired during the Class Period were sold at artificially inflated prices as a result of Defendants' false and misleading statements and omissions, and whether each Settlement Class Member was harmed when the allegedly misrepresented and omitted facts came to light. Accordingly, the legal elements of a securities fraud claim, including false statements, scienter, and loss causation, will entail common proof. Likewise, materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," and thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen*, 568 U.S. at 467. And the Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988) dispensed with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. Thus, the "predominance" requirement is satisfied.

### 2.   A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

20

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each factor weighs in favor of finding superiority here.

As to the first two factors, Lead Counsel is unaware of any individual Settlement Class Member interested in bringing his/her/its own action against Defendants for securities fraud or of any other individual cases (other than those consolidated into this one). The absence of other matters confirms the limited interest individual Settlement Class Members have in prosecuting separate actions. Absent certification, the burden and expense of litigating would not be distributed among the Settlement Class, one of the advantages of the class action mechanism.

Indeed, securities fraud actions are generally considered especially appropriate for class action treatment because they often involve a large number of plaintiffs with relatively small claims. *See Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities fraud claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide*, 251 F.R.D. at 139 ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'"). In light of the number of potential claimants against Defendants and the size of their claims, class action treatment is particularly suitable here.

Further, certification of the Settlement Class for the purpose of effecting the Settlement is the superior method to facilitate the resolution of the Class's claims against Defendants. Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for

settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584 (S.D.N.Y. 2008). Resolution of the Settlement Class's claims against Defendants through the Settlement is superior to any other available method of resolution.

For all of the foregoing reasons, the Settlement Class meets the class certification requirements of both 23(a) and 23(b).

### C. Kaplan Fox Should Be Appointed Class Counsel

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." Kaplan Fox satisfies the requirements of Fed. R. Civ. P. 23(g) and should be appointed as Class Counsel. As discussed above, Kaplan Fox has fairly and adequately represented the Class as Lead Counsel and will continue to do so. Further, Kaplan Fox's extensive experience and success in litigating securities class actions has been recognized by numerous courts. *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 149 (S.D.N.Y. 2012) (appointing Kaplan Fox as co-class counsel because the firm is "highly experienced in prosecuting securities class actions"); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 121 (E.D.N.Y. 2012) (citing "Kaplan Fox's extensive experience and proven track record as counsel in securities class actions" in approving lead counsel application); *In re OCA, Inc. Securities and Derivative Litig.*, No. 05-cv-2165, 2008 WL 4681369, at *10 (E.D. La. Oct. 17, 2008) ("Kaplan Fox has litigated numerous complex class actions throughout the country in the past three decades and has been substantially involved in over 25 securities class actions with recoveries of over $10 million."); *see also*, Ex. 2 (firm resume). For these reasons, the Court should preliminarily approve Kaplan Fox as Class Counsel.

22

## III.   THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits A-(i) and A-(iii) to the Preliminary Approval Order (Ex. 1-A), respectively, satisfy due process, the Federal Rules of Civil Procedure, and the PSLRA. "Due process requires that the notice to class members fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotation marks and citations omitted). Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Collectively, as required by Rule 23(c)(2)(B), the proposed forms of notice here "clearly and concisely state in plain, easily understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at his request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). *See In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010). The Notice also satisfies the PSLRA's separate requirements by, *inter alia*, stating: (A) the amount of the Settlement determined in the aggregate and on an average per share basis; (B) that the Parties do not agree on the average amount of damages per share that would be recoverable; (C) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (D) the contact information for Lead Counsel; and (E) the reasons why the Parties are proposing the

23

Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(E).

Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to all Settlement Class Members who can be identified and located through reasonable effort, using information provided by Textron's transfer agent, as well as information provided by third-party banks, brokers, and other nominees about their customers who may have eligible purchases. Lead Counsel will also cause the Summary Notice to be published in *Investor's Business Daily* and transmitted over the internet using *PR Newswire*. In addition, the Notice and Claim Form will be made available for viewing and downloading on the settlement website and Lead Counsel's website.

Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd. as the Claims Administrator to provide all Court-approved notices to Settlement Class Members, to process Claim Forms, and to administer the Settlement. A.B. Data is a nationally-recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements, and was selected by Lead Counsel through a competitive bidding process involving five well-qualified firms. *See* Ex. 3 (A.B. Data securities case list); *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *11 (noting A.B. Data's extensive experience in approving as claims administrator).

## IV.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the following schedule for the Court's review and approval, which summarizes the deadlines in the Preliminary Approval Order. If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Fairness Hearing for a date one hundred (100) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Deadline for mailing individual Notices and Claim Forms ("Notice Date") | *30 calendar days after entry of Preliminary Approval Order.* |
|---|---|
| Deadline for publication in *Investor's Business Day* and transmission over *PR Newswire* | *Within 10 calendar days of the Notice Date.* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for fees and expenses | *No later than 35 calendar days before the Settlement Fairness Hearing.* |
| Deadline for submission of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Fairness Hearing.* |
| Deadline for filing reply papers in support of the motions | *No later than 7 calendar days before the Settlement Fairness Hearing.* |
| Settlement Fairness Hearing | *At the Court's convenience, but no fewer than 100 calendar days after the entry of the Preliminary Approval Order.* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 120 calendar days after the Notice Date.* |

## V.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its motion and enter the Preliminary Approval Order, submitted herewith as Exhibit 1-A to the Stipulation (Ex. 1).

Dated: July 27, 2022

By: */s/   Frederic S. Fox*

Frederic S. Fox
Donald R. Hall
Melinda Campbell
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the proposed Settlement Class*