**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Textron Inc. Securities Litigation | CASE NO.: 1:19-CV-7881-DC |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND PLAN OF ALLOCATION</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
    ADEQUATE, AND WARRANTS FINAL APPROVAL ................................................ 2

A.  The Law Favors and Encourages Settlement of Class Action Litigation .......................... 2

B.  Legal Standards for Final Approval ............................................................................ 3

C.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement
    Class ............................................................................................................... 5

D.  Arm's-Length Negotiations Conducted by Experienced Lead Counsel Support
    Approval ........................................................................................................... 6

E.  The Relief Provided by the Settlement Is Adequate ...................................................... 8

    1.  The Complexity, Expense, and Likely Duration of the Litigation
        Support Approval ........................................................................................ 8

    2.  The Risks of Establishing Liability and Damages Support Approval .................... 9

    3.  The Risks of Maintaining Class Action Status through Trial Support
        Approval ..................................................................................................... 10

F.  The Effective Process for Distributing Relief to the Settlement Class ............................. 11

G.  The Requested Attorneys' Fees Are Reasonable .......................................................... 12

H.  Application of the Remaining *Grinnell* Factors Support Approval of the
    Settlement ......................................................................................................... 12

    1.  The Inability of Defendants to Withstand a Greater Judgment ......................... 12

    2.  The Reaction Of The Settlement Class To the Settlement Supports
        Approval ..................................................................................................... 13

    3.  The Stage of the Proceedings and the Amount of Information Available
        to Counsel Support Approval ....................................................................... 14

4.      The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval.......................................... 15

II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 17

III.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS................................................................... 19

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 20

V.      CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) .............................................................................................. 10

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
    No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............................. 15, 16

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981) ................................................................................................ 9

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ............................................................................ 4, 8, 12, 16

*City of Providence v. Aeropostale, Inc.,*
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................... 15

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ...................................................................................... 7

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ............................................................................................. 10

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000) ...................................................................................... 4

*Guevoura Fund Ltd. v. Sillerman,*
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................. 7

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 2, 20

*In re Am. Bank Note Holographics, Inc.,*
    *Sec. Litig.,* 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................... 17

*In re AOL Time Warner, Inc.,*
    No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006) ................................................................................. 11, 14, 16

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................................... 9, 14

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.,*
    772 F.3d 125 (2d Cir. 2014) .................................................................................... 19

*In re Barrick Gold Sec. Litig.,*
314 F.R.D. 91 (S.D.N.Y. 2016) ................................................................................................ 5

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.,*
909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................................... 13, 17

*In re Citigroup Inc. Sec. Litig.,*
No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ................................... 3

*In re Elan Sec. Litig.,*
385 F. Supp. 2d 363 (S.D.N.Y. 2005)...................................................................................... 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.,*
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x. 37 (2d Cir. 2016)...................................................................................... 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................... 7, 17

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................ 17

*In re Gilat Satellite Networks, Ltd.,*
No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ............................................. 8

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 4, 9, 10, 12

*In re GSE Bonds Antitrust Litig.,*
No. 19- CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ................................. 8

*In re IMAX Sec. Litig.,*
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................. 3, 7, 8, 17

*In re Initial Pub. Offering Sec. Litig.,*
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................... 17

*In re Luxottica Grp. S.p.A. Sec. Litig.,*
233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................. 8

*In re Marsh & McLennan Cos. Sec. Litig.,*
No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................. 10, 20

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................ 17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
246 F.R.D. 156 (S.D.N.Y. 2007) ...................................................................................... 17, 19

iv

*In re Merrill Lynch Tyco Research Sec. Litig.,*
249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................... 18

*In re Nissan Radiator/Transmission Cooler Litig.,*
No. 10 CV 7493(VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)...................................... 14

*In re PaineWebber Pshps. Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997)............................... 13, 17

*In re Patriot Nat'l, Inc. Sec. Litig.,*
828 F. App'x 760 (2d Cir. 2020) ..................................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................... 4, 8

*In re Polaroid ERISA Litig.,*
240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................... 5

*In re Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................... 10

*In re Veeco Instruments Inc. Sec. Litig.,*
No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................. 15

*Khait v. Whirlpool Corp.,*
No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................... 14, 15

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................... 9

*Padro v. Astrue,*
No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ...................... 15

*Strougo v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 9

*Teachers' Ret. Sys. of La., v. A.C.L.N. Ltd,*
No. 01-cv-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................ 12

*Thompson v. Metro. Life Ins. Co.,*
216 F.R.D. 55 (S.D.N.Y. 2003) ..................................................................... 4

*Vaccaro v. New Source Energy Partners L.P.,*
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005)............................................................................. *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 19

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 1

Fed. R. Civ. P. 23(a) ................................................................................................ 1, 20

Fed. R. Civ. P. 23(b)(3).............................................................................................. 1, 20

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 19, 20

Fed. R. Civ. P. 23(e) ............................................................................................... *passim*

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements—2021 Year in Review* ..................... 2

Lead Plaintiff IWA Forest Industry Pension Plan ("Lead Plaintiff"), on behalf of itself and all other members of the Settlement Class, respectfully submits this memorandum of law in support of final approval of the proposed Settlement.[1] Specifically, Lead Plaintiff seeks entry of an order: (i) granting final approval of the Settlement; (ii) certifying the proposed Settlement Class for purposes of settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and (iii) approving the Plan of Allocation.

## PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiff has agreed to settle all claims in the Action in exchange for a payment of Seven Million Nine Hundred Thousand Dollars ($7,900,000.00) (the "Settlement"). Lead Plaintiff respectfully submits that the proposed Settlement satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure. As stated in the accompanying Fox Declaration,[2] the Settlement represents approximately 9% of the aggregate damages estimated by Lead Plaintiff's damages expert. ¶ 6. As set forth more fully below, this recovery is higher than the 4-6% recoveries commonly approved by courts in this circuit, and higher than the 4.9% median recovery for Rule 10b-5 case settlements in 2021, according to

---

[1] All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated June 23, 2022 ("Stipulation") (ECF No. 71-1). All citations to "¶ __" herein refer to paragraphs in the Declaration of Frederic S. Fox in Support of (1) Lead Plaintiff's Motion for Approval of Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Fox Declaration" or "Fox Decl."), filed herewith. Citations to "Ex. __" herein refer to exhibits to the Fox Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2] For the sake of brevity in this memorandum of law, the Court is respectfully referred to the Fox Declaration for a detailed description of, among other things: the nature of the claims asserted (¶¶ 15-16, 23); the procedural history of the Action and the work performed by Lead Counsel (¶¶ 17-34); the Settlement negotiations (¶¶ 35-37); the risks of continued litigation (¶¶ 49-64); the Plan of Allocation (¶¶ 65-70); and the Notice program (¶¶ 41-48).

Cornerstone Research, *Securities Class Action Settlements—2021 Year in Review*, at 6 (2022), Ex. 1 at p. 6.

The Settlement is a favorable result, particularly in light of the substantial risks of continued litigation. While Lead Plaintiff and Lead Counsel believe that the claims asserted are meritorious, we recognize the challenges to establishing Defendants' liability, obtaining class certification, proving classwide damages, and achieving a greater recovery. ¶¶ 49-64.

The Settlement avoids these risks and the delays of further litigation while providing a significant, certain, and immediate benefit to the Settlement Class in the form of a $7.9 million payment. In light of these considerations, as discussed below and in the Fox Declaration, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. It also has the full support of Lead Plaintiff. *See* Declaration of Mark Guiton in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses, dated October 13, 2022, Ex. 6 at ¶ 5.  Lead Plaintiff also requests that the Court finally certify the Settlement Class and approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement, which was described in the Notice sent to Settlement Class Members and posted in full on the Settlement website.

## ARGUMENT

I.    **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL**

A.    **The Law Favors and Encourages Settlement of Class Action Litigation**

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298

F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). This policy would be well-served by approval of the Settlement of this complex securities class action, that absent resolution, would consume months and possibly years of additional time of this Court.

### B.    Legal Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, Nos. 09 MD 2070 (SHS), 09 Civ. 7359(SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Pursuant to the December 1, 2018 amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed ward of attorneys' fees, includingtiming of payment; and

> iv.    any agreement required to be identified under Rule 23(e)(3);and

> (D)    whether the proposal treats class members equitably relative to each other.

Additionally, historically, courts in the Second Circuit consider the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) in evaluating a class-action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

As demonstrated herein, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell* and, accordingly, final approval is warranted.[3]

---

[3]    The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Comm. Notes to 2018 Amendments. Indeed, "the new Rule 23(e) factors [] add to, rather than displace, the Grinnell factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

C.      **Lead Plaintiff and Lead Counsel Have Adequately Represented the
Settlement Class**

In determining whether to approve a class action settlement, the court should consider

whether the "class representatives and class counsel have adequately represented the class." Rule

23(e)(2)(A). *See also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (noting

that "the adequacy requirement 'entails inquiry as to whether: 1) plaintiffs' interests are

antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified,

experienced and able to conduct the litigation'").

There can be little doubt that Lead Plaintiff and Lead Counsel have adequately represented

the Settlement Class. Lead Plaintiff, like all other members of the Settlement Class, acquired

Textron stock during the Class Period, when its value was allegedly artificially inflated by false

and misleading statements and omissions. Thus, the claims of the Settlement Class and Lead

Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from

Defendants aligns the interests of Lead Plaintiff with the interests of all members of the Settlement

Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs

and class members share the common goal of maximizing recovery, there is no conflict of interest

between the class representatives and other class members.").

Further, Lead Plaintiff was an active and informed participant in the litigation and, among

other things, (i) regularly communicated with Lead Counsel regarding the posture and progress of

the Action; (ii) received all significant pleadings and motions filed in the Action; (iii) received or

discussed significant decisions in the Action; (iv) consulted with Lead Counsel throughout the

mediation negotiations; and (v) evaluated and approved the proposed Settlement. ¶ 8; *see also,*

*generally,* Ex. 6.

Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of

5

knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. During the course of the litigation, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims. ¶ 7. Moreover, Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4-A) and was able to successfully conduct the litigation against skilled opposing counsel, attorneys at Kirkland & Ellis LLP. Accordingly, the Settlement Class has been, and remains, well represented.

### D. Arm's-Length Negotiations Conducted by Experienced Lead Counsel Support Approval

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement merits a presumption of fairness because it resulted from extensive, arms' length negotiations conducted by experienced counsel for all parties after engaging in targeted discovery, with the assistance of the independent mediator, Greg Danilow, Esq. of Phillips ADR. ¶ 35. The Settling Parties each submitted written statements to Mr. Danilow, briefing him on relevant facts and legal issues, and a remote mediation session took place on March 11, 2022. *Id*. The mediation briefs and session discussed the Parties' respective views regarding the merits of the Action, including the evidence adduced, Defendants' defenses, and issues relating to damages. *Id*. Although the Parties were unable to reach an agreement in the initial mediation session, after two months of further negotiations, they agreed in principle to settle this Action as to all Defendants and all claims for the Settlement Amount. ¶¶ 36-37.

6

Moreover, the use of an independent mediator, Mr. Danilow, further supports the presumption of fairness and the conclusion that the Settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *FLAG Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (applying the presumption of fairness where the settlement was "the product of extended 'arm's length' negotiations, including, among other things, [a] two-day settlement conference").

Finally, in evaluating the Settlement, the Court should consider the judgment of Lead Counsel. *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("Where '[c]ounsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned,' . . . counsel's 'judgment is entitled to great weight.'") (internal quotations omitted).[4] Here, Lead Counsel is a leading securities class action litigation firm with decades of experience in the practice area, and was well-informed of the risks and merits of the case prior to reaching the proposed Settlement.[5] Accordingly, Lead Counsel's judgment that the Settlement is in the best interest of the Settlement Class should be given considerable weight.

---

[4]    *See also, In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[5]    *See* Ex. 4-A (Kaplan Fox firm resume).

### E.    The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at \*2 (S.D.N.Y. Dec. 16, 2019). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval

"[I]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *IMAX*, 283 F.R.D. at 189. In fact, "[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at \*10 (E.D.N.Y. Apr. 19, 2007), and thus "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation," *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

This case was no exception. Without the Settlement, the Parties faced the certainty that litigating this Action, through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals would be time consuming and expensive. Moreover, this litigation involved multiple complex legal and factual issues, including issues

8

regarding loss causation and damages, that would have required substantial expert testimony. *See* ¶¶ 57, 60.

Here, the Settlement provides a cash benefit to the Settlement Class without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.").

### 2.    The Risks of Establishing Liability and Damages Support Approval

In assessing this factor, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.

While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were considerable risks in pursuing the Action through trial and beyond. With respect to liability, Defendants would have strenuously challenged the alleged misrepresentations and scienter. Specifically, Defendants would have argued, among other things, that: (i) none of the alleged misstatements were false or misleading; (ii) the allegations regarding the Individual Defendants' stock sales are insufficient to establish a motive to defraud; and (iii) Defendants had a reasonable basis to believe that their statements concerning Arctic Cat non-current inventory were true when made. ¶¶ 54-56.

Lead Plaintiff would have also confronted considerable challenges in establishing loss causation and damages. Lead Plaintiff bears the burden of establishing loss causation. *See, e.g., Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). Resolving disputed issues regarding damages and loss causation would require expert testimony, and there is no doubt that Defendants would have presented an expert who would opine that the price decline on the alleged corrective disclosure date was caused, in whole or substantial part, by factors unrelated to the alleged fraud, and therefore, that the Settlement Class had little or no damages. ¶ 57. Courts recognize a substantial litigation risk from uncertainty as to which expert's view will be credited by the jury. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"); *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

Moreover, at the class certification stage, Defendants would have likely challenged Lead Plaintiff's expert evidence that the market for Textron stock traded efficiently during the Class Period and argued that reliance could therefore not be presumed under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). ¶ 60. If their arguments were successful, individual issues would likely predominate over common ones, precluding class certification.

### 3. The Risks of Maintaining Class Action Status through Trial Support Approval

Even if Lead Plaintiff were successful in obtaining class certification, "there could be a risk of decertification at a later stage." *Global Crossing*, 225 F.R.D. at 460. Here, "the uncertainty surrounding class certification supports approval of the Settlement," *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009),

because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *In re AOL Time Warner, Inc.*, No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at * 12 (S.D.N.Y. Apr. 6, 2006); ¶ 61 (discussing risks of decertification).

## F.    The Effective Process for Distributing Relief to the Settlement Class

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Here, the Settlement will be distributed with the assistance of an experienced claims administrator. *See, generally*, ¶¶ 65-70. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. ¶ 68; *see* Stip. ¶ 20. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. ¶ 69. Lead Plaintiff's claim will be reviewed in the same manner. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id.*

After the Settlement reaches its Effective Date (Stip. at ¶ 31) and the claims process is completed, Lead Plaintiff will seek Court approval to distribute the Net Settlement Fund. If approval is granted, Authorized Claimants will be issued payments as described in the Stipulation (at ¶ 27). If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further

11

distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are unclaimed funds, Lead Plaintiff will request Court approval of a *cy pres* beneficiary. Ex. 2-A at p. 6 (¶ 34).

### G.       The Requested Attorneys' Fees Are Reasonable

As discussed in the accompanying memorandum seeking an award of attorneys' fees, the proposed attorneys' fees of 25% of the Settlement Fund are reasonable in light of the efforts of Lead Counsel, the significant risks, and the favorable results achieved in the litigation. Moreover, the fact that approval of attorneys' fees are entirely separate from approval of the Settlement and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the Court's ruling on attorneys' fees militates in favor of finding the Settlement fair and reasonable.

### H.       Application of the Remaining *Grinnell* Factors Support Approval of the Settlement

#### 1.       The Inability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in settlement is relevant to whether the settlement is fair. *Grinnell*, 495 F.2d at 463. While it is Lead Plaintiff's understanding that Defendants have the ability to fund a settlement given available insurance, continued litigation would put that insurance at risk of dwindling. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (ability to withstand a greater judgment supports final approval where the "main settlement funds available to the individuals are the insurance proceeds" which "would be largely consumed by defense costs if this litigation were to continue"); *Teachers' Ret. Sys. of La., v. A.C.L.N. Ltd,* No. 01-cv-11814, 2004 WL 1087261, at *4

(S.D.N.Y. May 14, 2004) (likely depletion of insurance supports settlement approval). Accordingly, this factor weighs in favor of final approval of the Settlement.

### 2. The Reaction Of The Settlement Class To the Settlement Supports Approval

The second factor considered is the reaction of the class to a proposed settlement. *See, e.g., In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012). Indeed, the "the absence of object[or]s may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

In accordance with the Preliminary Approval Order, to date a total of 92,940 Notice Packets have been mailed to potential Settlement Class Members and nominees. Ex. 2 ¶ 8. On September 21, 2022, all of the important documents in this Action including, among others, the Notice, Claim Form, Plan of Allocation, Stipulation, and Summary Notice, were posted on the website designated for this Action, www.TextronSecuritiesLitigation.com. *Id.* ¶¶ 11-13. Additionally, the Summary Notice was published on September 26, 2022 in the national edition of *Investor's Business Daily* and over the *PR Newswire*. *Id.* ¶ 9. Consistent with the drafts reviewed and approved by the Court, the long-form Notice and the Summary Notice included (i) a summary of the terms of the Settlement; (ii) Lead Counsel's reasons for recommending the Settlement; (iii) the date of the Settlement Hearing; (iv) information on how to obtain more information on the case and the Settlement; and (v) an explanation of Settlement Class Members' rights to object or exclude themselves. *See* Exs. 2-A-C.

Although the deadline set by the Court for Settlement Class Members to object to the Settlement has not yet passed, to date Lead Counsel is aware of no objections. *See* Ex. 2 ¶ 15. If any objections are timely received, Lead Counsel will address them in its reply papers to be filed

with the Court on November 11, 2022.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval

For this factor, the "relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010). "The parties need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL TimeWarner*, 2006 WL 903236, at *10 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493(VB),  2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (even where "the parties have not engaged in extensive discovery," this factor weighs in favor of approval after "plaintiffs conducted an investigation prior to commencing the action" and consulted with experts).

Here, Lead Plaintiff developed a thorough understanding of the strengths and weaknesses of the Settlement Class's claims through the prosecution of the Action. In addition to reviewing and analyzing Textron's public filings and news reports and conducting further investigations related to potential claims, Lead Plaintiff pursued expedited discovery to obtain from Defendants and review key categories of documents relevant to proving Lead Plaintiff's claims. ¶¶ 33-34. Additionally, Lead Counsel consulted with economics experts who provided analyses concerning the critical issues of market efficiency, loss causation, and classwide damages.  ¶ 98. In addition to informing Lead Plaintiff with respect to the potential settlement value of the case, these analyses

14

provided further insight into the strengths and weaknesses of Lead Plaintiff's and the Settlement Class's claims. Finally, before reaching the proposed Settlement, Lead Counsel engaged in extensive mediation negotiations through which the parties had the opportunity to glean more insights into their adversaries' respective views on the key issues of the case. ¶¶ 35-37.

Thus, Lead Plaintiff and Lead Counsel have "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *6 (E.D.N.Y. Oct. 18, 2013); *see also Whirlpool*, 2010 WL 2025106, at *6 (factor supported approval where parties informally exchanged information and participated in mediation, which "allowed them to further explore the claims and defenses"). Accordingly, the substantial amount of information developed provided Lead Plaintiff and Lead Counsel with a well-informed basis for their belief that the Settlement is highly favorable to the Settlement Class, and this factor supports approval of the Settlement.

### 4. The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval

Finally, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (consideration whether "it provides a 'substantial recovery' in light of the relevant circumstances and does not 'compare the terms of the [s]ettlement with a hypothetical . . . measure of a recovery that might be achieved' through trial." (quoting *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at

15

*11 (S.D.N.Y. Nov. 7, 2007)). To do so, courts "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *see also Sanofi-Aventis*, 2010 WL 3119374, at *4.

When weighed against the risks of continued litigation, the proposed $7.9 million Settlement Fund value is a significant result. Indeed, the Court's dismissal of all but one category of alleged misrepresentation in the Complaint, which was affirmed by the Second Circuit, amply demonstrates the risks of this litigation. In light of the unpredictability of motion practice, a lengthy and complex trial, and the inevitable appellate process that would follow with the risk of reversal, the Settlement falls squarely within the "range of reasonableness." *Visa*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (citation omitted). Moreover, factoring in the present time value of money against these litigation risks and delays further supports finding the Settlement within the range of reasonableness. *See AOL Time Warner*, 2006 WL 903236, at *13 ("the benefit of the Settlement will…. be realized far earlier than a hypothetical post-trial recovery").

The Settlement also provides a very favorable recovery in strictly economic terms. Based on Lead Plaintiff's consulting expert's estimate of aggregate damages, the Settlement Amount represents a recovery of 9% of the Settlement Class's damages—a percentage that is well above the commonly approved recovery range in this circuit of 6% or less. *See, e.g., In re Patriot Nat'l,*

16

*Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"). It also exceeds the 4.9% median recovery for Rule 10b-5 case settlements in 2021, as found by Cornerstone Research. *See* Ex. 1 at p. 6.

Thus, by all applicable measures, the Settlement is a significant recovery for the Settlement Class and well within the range of reasonableness.

## II.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court should approve a plan for allocating settlement proceeds if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation satisfies this standard as long as it has a "rational basis." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. Plans of allocation, however, need not be "tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber*, 171 F.R.D. at 133.

Courts "look primarily to the opinion of counsel" in evaluating a plan of allocation. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 at 163 (S.D.N.Y. 2011); *see also, In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); *In re*

17

*Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel. . . . As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."). Here, Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiff's damages expert and submits that the Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members. ¶¶ 67-68.

In developing the Plan of Allocation, Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Textron's common stock throughout the Class Period that was purportedly caused by the alleged fraud. ¶ 68. An inflation table was created and included on the Settlement website as part of the Plan of Allocation, which will be utilized by the Claims Administrator in calculating Recognized Loss Amounts for claimants based on the transactional information provided in their claim forms. *Id*. The Claims Administrator will use the Recognized Loss Amounts to determine each eligible claimant's Recognized Claim and pro rata share of the Net Settlement Fund. *Id*. Thus, the Plan of Allocation provides a means for distributing the Net Settlement Fund to Settlement Class Members that is rationally tied to Lead Plaintiff's theories of liability and damages, which supports approval. *See In re Merrill Lynch Tyco Research Sec. Litig*., 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."). Moreover, there have been no objections to date to the proposed Plan of Allocation. ¶ 48.

In sum, the proposed Plan of Allocation was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

18

### III.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice to class members of a settlement satisfies Rule 23(e) and due process where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114 (discussing Rule 23(e)(1)); *see also In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, 772 F.3d 125, 133 n.5 (2d Cir. 2014) (similar notice plan sufficient). Notice need not be perfect or received by every class member, but instead be reasonable under the circumstances. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."); *Visa*, 396 F.3d at 114. Notice is adequate if the average class member understands the terms of the proposed settlement and the options the class member has. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007).

The Court-approved Notice satisfies Rule 23(e) and due process, as well as the specific requirements of Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), by apprising Settlement Class Members of important information including, among other things, the following: (i) a detailed explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) an explanation of the reasons why the Settlement is proposed; (v) a statement indicating the attorneys' fees and costs that will be sought; (vi) a description of Settlement Class Members' right to opt-out or to object, including the deadlines and process for doing so; and (vii) notice of the binding effect of a judgment on Settlement Class Members. *See generally*, Ex. 2-A.

Moreover, the Notice has been widely distributed to Settlement Class Members in accordance with the plan approved in the Preliminary Approval Order. Specifically, the Court-

19

approved claims administrator, A.B. Data, began mailing copies of the Notice Packet to potential Settlement Class Members on September 21, 2022. ¶ 5. As of October 13, 2022, A.B. Data had mailed a total of 92,940 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees. ¶ 8. In addition, A.B. Data published the Summary Notice in *Investor's Business Daily* and over the *PR Newswire* on September 26, 2022. ¶ 9. Copies of the Notice, Claim Form, proposed Plan of Allocation, Stipulation, and Complaint were made available on the Settlement website maintained by A.B. Data beginning on September 21, 2022. ¶ 11.

This combination of individual notification by mail, publication in a national newspaper focusing on investors, and dissemination over the internet using a wire service and dedicated website provided "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Advanced Battery Techs.*, 298 F.R.D. at 182-83; *Marsh & McLennan*, 2009 WL 5178546, at *12-*13.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes only in the Preliminary Approval Order. Therefore, Lead Plaintiff respectfully requests that the Court grant final certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) for all the reasons set forth in Lead Plaintiff's previous briefing. *See* ECF No. 70.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its motion for final approval of the Settlement and Plan of Allocation and enter the proposed final judgment and order submitted as Exhibit A to Lead Plaintiff's Notice of Motion.

Dated: October 14, 2022

By: */s/   Frederic S. Fox*
Frederic S. Fox
Donald R. Hall

Melinda Campbell
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714