**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Textron Inc. Securities Litigation | CASE NO.: 1:19-CV-7881-DC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
      PERCENTAGE OR LODESTAR METHOD ................................................................4

      A.    The Requested Attorneys' Fee Is Reasonable Under the Percentage-of-the-
            Fund Method ........................................................................................................5

      B.    The Requested Attorneys' Fee Is Reasonable Based On A Lodestar Cross-
            Check ....................................................................................................................7

III.  THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
      THE SECOND CIRCUIT'S FACTORS ......................................................................9

      A.    Lead Counsel Has Devoted Significant Time and Labor to the Action ................10

      B.    The Magnitude and Complexity of the Action Support the Requested Fee ...........10

      C.    The Risks of the Litigation Support the Requested Fee .......................................14

      D.    The Quality of Lead Counsel's Representation Supports the Requested Fee ........15

      E.    The Requested Fee in Relation to the Settlement .................................................16

      F.    Public Policy Considerations Support the Requested Fee.....................................16

IV.   THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
      REQUESTED FEE ...................................................................................................18

V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................18

VI.   LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT IS APPROPRIATE
      UNDER THE PSLRA...............................................................................................20

VII.  CONCLUSION.........................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Backman v. Polaroid Corp.,*
910 F.2d 10 (1st Cir. 1990) ..................................................................................... 13

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985) ......................................................................................... 4, 16

*Bentley v. Legent Corp.,*
849 F. Supp. 429 (E.D. Va. 1994) *aff'd sub nom. Herman v. Legent Corp.,*
50 F.3d 6 (4th Cir. 1995) ...................................................................................... 13

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................................. 4

*Christine Asia Co. v. Yun Ma,*
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................... 8

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ................................................................................... 14

*City of Providence v. Aeropostale, Inc.,*
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ..................................... 12

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.,*
No. 1:20-CV-02031-JSR, 2021 WL 2736135 (S.D.N.Y. June 30, 2021) ................................. 8

*In re Comverse Tech., Inc. Sec. Litig.,*
No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................. 7, 16

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) .............................................................................................. 12

*EVCI Career Colls. Holding Corp. Sec. Litig.,*
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 17

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.,*
No. 02-CV-3400(CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................... *passim*

*Fogarazzo v. Lehman Bros. Inc.,*
No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ............................................ 6

*Goldberger v. Integrated Res, Inc.,*
209 F.3d 43 (2d Cir. 2000) ................................................................................. *passim*

*Guevoura Fund Ltd. v. Sillerman,*
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................. 6

*Hayes v. Harmony Gold Min. Co.,*
  No. 08 CIV. 03653 BSJ, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)
  *aff'd*, 509 F. App'x 21 (2d Cir. 2013) .................................................................................. 6

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) .............................................................................................................. 15

*Hicks v. Morgan Stanley,*
  No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................ 5, 17

*Hubbard v. BankAtlantic Bancorp, Inc.,*
  688 F.3d 713 (11th Cir. 2012) .............................................................................................. 13

*In re Am. Bank Note Holographics Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................... 14

*In re Am. Int'l Grp., Inc.,*
  No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) .................................. 20

*In re Amgen Inc. Sec. Litig.,*
  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................... 13

*In re BioScrip, Inc. Sec. Litig.,*
  273 F. Supp. 3d 474 (S.D.N.Y. 2017) *aff'd sub nom. Fresno Cnty. Employees' Ret.
  Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) ............................................. 6

*In re Bristol-Myers Squibb Sec. Litig.,*
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ..................................................................................... 7

*In re China Sunergy Sec. Litig.,*
  No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................ 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
  343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
  822 F. App'x 40 (2d Cir. 2020) ........................................................................................ 16, 20

*In re Glob. Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................... 13, 15

*In re Marsh & McLennan, Inc. Sec. Litig.,*
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................... 15, 16, 21

*In re Marsh ERISA Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................... 15, 16

*In re Platinum & Palladium Commodities Litig.,*
    No. 10-CV-3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) ..................................................... 8

*In re Signet Jewelers Ltd. Sec. Litig.,*
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................... 8

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................................... 11

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................................ 5, 6, 12, 14

*In re Veeco Instruments Inc. Sec. Litig.,*
    No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................. 6, 11

*In re Vivendi Universal, S.A. Sec. Litig.,*
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................................................... 13

*In re WorldCom, Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................. 15, 20

*Khait v. Whirlpool Corp.,*
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................. 6

*Maley v. Del Glob. Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................. 11, 17

*McDaniel v. Cnty. of Schenectady,*
    595 F.3d 411 (2d Cir. 2010) ..................................................................................................... 5

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ................................................................................................................ 8

*Morrison v. Nat'l Austl. Bank Ltd.,*
    561 U.S. 247 (2010) ............................................................................................................... 13

*NECA IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
    No. 08-cv-10783, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) ................................................. 8

*Reynolds v. Repsol YPF, S.A.,*
    No. 1:06-cv-00733-DAB, slip op. (S.D.N.Y. May 7, 2008) ....................................................... 6

*Savoie v. Merchs. Bank,*
    166 F.3d 456 (2d Cir. 1999) ..................................................................................................... 5

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
    No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)..................................................................................................... 4, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)......................................................................................... 5, 7, 8

*Willix v. Healthfirst, Inc.,*
    No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)......................... 9

*Woburn Ret. Sys. v. Salix Pharm., Ltd.,*
    No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)................................ 8

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................................. 20

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................................... 1

**Other Authorities**

H.R. Rep. No. 104-369 as reprinted in 1995 U.S.C.C.A.N. 730 ........................................... 17, 20

*Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA 2022) ............................................................................................................................ 7

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(h), Court-appointed Lead Counsel Kaplan Fox & Kilsheimer LLP ("Kaplan Fox" or "Lead Counsel") respectfully submits this memorandum of law in support of its motion for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund; and (ii) reimbursement from the Settlement Fund of $82,790.80 of Litigation Expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action, and Lead Plaintiff's expenses in the amount of $9,233.48 (Canadian $12,664.96)[1] directly related to its representation of the Settlement Class in this Action.[2]

## I.    PRELIMINARY STATEMENT

After three years of dedicated litigation efforts, Lead Counsel has successfully negotiated a settlement of this securities class action with defendants Textron, Inc. ("Textron" or the "Company"), Scott C. Donnelly and Frank T. Connor (collectively "Defendants"). The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for $7.9 million in cash. Based on Lead Counsel's and Lead Plaintiff's thorough understanding of the risks and uncertainties in this litigation and the assessment of approximate class-wide damages, this recovery is a significant, favorable result for the Settlement Class.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less than the Settlement Amount (or nothing) if the Action were litigated through further discovery, class certification, summary judgment, trial, and post-trial appeals. ¶¶

---

[1]    The U.S. dollar amount is based on U.S.-Canadian exchange rates as of October 13, 2022.

[2]    All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated June 23, 2022 ("Stipulation") (ECF No. 71-1). All citations to "¶ __" herein refer to paragraphs in the Declaration of Frederic S. Fox in Support of (1) Lead Plaintiff's Motion for Approval of Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Fox Declaration" or "Fox Decl."), filed herewith. Citations to "Ex. __" refer to exhibits to the Fox Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

49-64. The Settlement eliminates these risks and provides a substantial benefit without further delay.

As fully set forth in the Fox Declaration, the litigation risks in this complex case were substantial, both from a liability and damages perspective. Lead Counsel assumed all of those risks in litigating the Action by taking this case on a fully contingent basis, and devoted substantial resources to prosecuting the Action against highly-skilled opposing counsel in order to achieve the Settlement. Among other work detailed in the Fox Declaration, Lead Counsel: (i) conducting a thorough investigation of potential claims against Defendants; (ii) reviewing and analyzing the Company's filings with the United States Securities and Exchange Commission ("SEC"), press releases, and representations to investors and analysts on conference calls and investor conferences; (iii) compiling and analyzing documents to prepare and file two detailed amended complaints; (iv) appealing the dismissal of the Action and achieving a partial reversal and remand; (v) engaging in expedited, preliminary discovery efforts, including the review of key categories of documents obtained from Defendants and the review and production of various categories of documents on behalf of Lead Plaintiff; (vi) consulting extensively with experts in the areas of loss causation, damages, and market efficiency; and (vii) participating in lengthy and complicated mediation discussions, including the preparation and exchange of mediation statements, with the assistance of an independent and neutral mediator.[3] ¶ 8.

Lead Counsel also engaged in protracted and hard-fought settlement negotiations with Defendants, including a formal remote mediation session overseen by an experienced mediator,

---

[3] For the sake of brevity in this memorandum of law, the Court is respectfully referred to the Fox Declaration for a detailed description of, among other things: the nature of the claims asserted (¶¶ 15-16); the procedural history of the Action and the work performed by Lead Counsel (¶¶ 17-34); the Settlement negotiations (¶¶ 35-40); and the risks of continued litigation (¶¶ 49-64).

Greg Danilow, Esq. of Phillips ADR. ¶ 35. Prior to the mediation session, the Parties engaged in targeted discovery and exchanged detailed mediation statements with citations to evidence supporting their positions on liability, damages, and class certification. Although the initial mediation session was unsuccessful, the Parties' settlement negotiations continued over the following two months and reached an agreement in principle to resolve the Action on May 5, 2022. ¶ 36. Negotiations of the complex terms of the Stipulation were concluded on June 23, 2022. ¶ 37.

Through September 30, 2022, Lead Counsel has devoted over 2,312 hours, with a resulting lodestar of $1,723,744.25, to the investigation, prosecution, appeal, and resolution of the Action. ¶ 81; Ex. 4-B (Kaplan Fox time report). Lead Counsel's fee request of 25% of the Settlement Fund represents a modest 1.15 multiplier to the total lodestar value of the time Lead Counsel dedicated to the Action. *Id.*

Pursuant to the Court's Preliminary Approval Order, 92,940 Notices have been disseminated to potential Settlement Class Members and nominees, and the Summary Notice was published in the national edition of *Investor's Business Daily* and transmitted over *PR Newswire*. ¶¶ 42, 44.[4] The Notice advises recipients that Lead Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and would seek reimbursement of Litigation Expenses paid or incurred by Lead Counsel in an amount not to exceed $125,000, which may include the costs and expenses of Lead Plaintiff directly related to its representation of the Settlement Class. ¶ 46. The fees and expenses that Lead Counsel and Lead Plaintiff now request do not exceed these amounts. The Notice further informs Settlement Class

---

[4]    *See also,* Declaration of Adam D. Walter Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Mailing Declaration") on behalf of the Court-appointed Claims Administrator A.B. Data Ltd. ("A.B. Data"), Ex. 2 ¶¶ 8-9.

Members that they may object to the requests for attorneys' fees and expenses until October 28, 2022. ¶ 47. While the deadline to object has not yet passed, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. ¶ 48.[5]

For the reasons discussed herein, Lead Counsel respectfully submits that the requested fee is fair and reasonable under the applicable legal standards. In addition, Lead Counsel also respectfully submits that the Litigation Expenses for which it seeks reimbursement were reasonable and necessary for the successful prosecution of the Action, as were the time and expenses for which Lead Plaintiff now seeks reimbursement. Accordingly, Lead Counsel respectfully submits that its motion for attorneys' fees and expenses should be granted in full.

## II.    THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action'"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive

---

[5]    If any objections are received following this submission, Lead Counsel will address them in its reply brief to be filed with the Court on November 11, 2022.

remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJG), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—25% of the Settlement Fund, translating to a multiplier of approximately 1.15 of Lead Counsel's lodestar —is well supported under either the "percentage" or "lodestar" method.

### A.    The Requested Attorneys' Fee Is Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerfulincentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("*Visa*"); *see also*, *Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008)

("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

Courts in the Second Circuit commonly award percentage fees ranging from 25% to 33% in cases with comparable settlement values to this one. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (granting fee of 33.33% of $7.5 million settlement and noting that "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund."); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (approving fee of 25% of $10.9 million settlement); *Hayes v. Harmony Gold Min. Co.*, No. 08 CIV. 03653 BSJ, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd,* 509 F. App'x 21 (2d Cir. 2013) (approving fee of one-third of a $9 million settlement fund); *Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194(SAS), 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *Khait v. Whirlpool Corp.,* No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 595 (S.D.N.Y. 2008) (awarding fees of 25% of $5 million settlement); *Reynolds v. Repsol YPF, S.A.,* No. 1:06-cv-00733–DAB, slip op. at 1 (S.D.N.Y. May 7, 2008) (awarding 25% of $8 million settlement); *Veeco,* 2007 WL 4115808, at *4 (awarding 30% of $5.5 million settlement fund).[6]

Likewise, the requested fee is lower than the median percentage fee granted in cases with comparable settlements. Specifically, a recent analysis by NERA Economic Consulting of securities class action settlements from 2012-2021 found that the median attorneys' fee award for

---

[6]    The referenced slip opinion is attached as Exhibit 5 to the Fox Declaration.

settlements between $5 and $10 million was 30%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 3 at 27.

For these reasons, the requested 25% fee is reasonable and should be approved.

**B.      The Requested Attorneys' Fee Is Reasonable Based On A Lodestar Cross-Check**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Visa*, 396 F.3d at 123 (*quoting Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."). In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Here, Lead Counsel spent more than 2,312 hours of attorney and other professional staff time litigating the case from inception through September 30, 2022. *See* ¶ 81; Ex. 4-B. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional staff by their current hourly rates, is $1,723,744.25. *Id.* The requested fee of 25% of the Settlement Fund (*i.e.*, a value of $1,975,000.00) therefore represents a multiplier of approximately 1.15 of the total lodestar. This multiplier is below the parameters approved throughout district courts in this

7

Circuit and is additional evidence that the requested fee is reasonable. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) (awarding fee representing 1.98 multiplier and observing that "lodestar multipliers between 2 and 5 are commonly awarded"); *Visa*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (approving fee based on lodestar multiplier of approximately 2.15, which the Court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude"); *Woburn Ret. Sys. v. Salix Pharm., Ltd.,* No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (3.14 multiplier); *NECA IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 08-cv-10783, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) (3.9 multiplier).

Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience and reputation.[7] Lead Counsel's hourly rates here range from $850-$1,100 for partners, $510-$750 for associates, $230-$265 for law clerks, and $195-$350 for paralegals and the firm's investigator.  *See* Ex. 4-B. This is well within the range of hourly rates that courts in this district approve for comparable work. *See, e.g., City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, No. 1:20-CV-02031-JSR, 2021 WL 2736135, at *2 (S.D.N.Y. June 30, 2021) (awarding fees based, in part, on lodestar calculation utilizing similar hourly rates (ranging from $375-$1,250 for attorneys)); *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-

---

[7]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

3617, 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015) (finding hourly rates ranging from $250 to $950 reasonable).

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek any additional payment for this work. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

For all these reasons, the lodestar cross-check supports the reasonableness of the requested fee.

## III. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexitiesof the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Lead Counsel's requested fee would be reasonable.

### A.    Lead Counsel Has Devoted Significant Time and Labor to the Action

Lead Counsel vigorously litigated this Action before the Settlement was reached. As detailed in the Fox Declaration, this Action was settled only after Lead Counsel conducted an extensive investigation into the Class's claims, prepared and filed two detailed complaints describing Defendants' alleged violations of the federal securities laws, conducted legal research and opposed Defendants' motion to dismiss, appealed the dismissal of Lead Plaintiff's claims and succeeded as to one category of alleged misrepresentation, obtained and reviewed targeted discovery from Defendants, and reviewed and produced documents on behalf of Lead Plaintiff. ¶¶ 17-34. Likewise, Lead Counsel engaged and devoted significant time and resources to meeting and conferring with expert economics consultants to assist in developing the claims that would be asserted in the amended complaints and to establish an appropriate model for and calculation of damages in this Action. ¶¶ 7, 98. Substantial time was also spent in the process of mediating and settling the Action, including time spent conferring with the Lead Plaintiff about the mediation and negotiations, preparing Lead Plaintiff's mediation brief and analyzing Defendants' mediation brief, preparing for and attending the remote mediation session with Mr. Danilow, subsequent negotiations to reach an agreed-upon Term Sheet, and negotiation of the Stipulation. ¶¶ 35-40.

As noted above, Lead Counsel expended more than 2,312 hours investigating, prosecuting and resolving this Action with a total lodestar value of $1,723,744.25. ¶ 81; Ex. 4-B. The significant amount of time and effort devoted to this case by Lead Counsel and the efficient and effective management of the litigation confirm that the fee request here is reasonable.

### B.    The Magnitude and Complexity of the Action Support the Requested Fee

Courts have long recognized that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-

10

3400(CM)(PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *5 (S.D.N.Y. Nov. 7, 2007) ("A securities case, 'by its very nature, is a complex animal.'") (quoting *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002)).

Had the Action not settled, the Parties would have proceeded with additional discovery, including depositions and expert discovery, Lead Plaintiff would have moved for certification of the class, and assuming certification was granted, the Action would have proceeded to summary judgment motions. To survive summary judgment, Lead Plaintiff would need to marshal sufficient evidence to establish the elements of its claims, including, for example, scienter (that Defendants intentionally or recklessly misled Textron investors) and loss causation (that Defendants' false or misleading statements about non-current inventory caused Lead Plaintiff's alleged losses when the truth was revealed in the alleged corrective disclosures on October 18, 2018 and December 6, 2018).

As detailed in the Fox Declaration, Defendants advanced considerable challenges to Lead Plaintiff's claims. Regarding the alleged misrepresentations, Defendants strongly disputed that they made any material misrepresentations or omissions, arguing that their statements concerned only model year 2016 and older inventory which had, in fact, been significantly reduced before the start of the Class Period. ¶ 55. The Court initially credited this argument and dismissed the claim, and Lead Plaintiff faced risks that discovery may strengthen Defendants' argument or that a jury may see the issue the same way as the Court did. *Id*. Defendants would also continue to contest scienter, likely arguing that the allegations regarding the Individual Defendants' stock sales

11

are insufficient to establish a motive to defraud, and that Defendants had a reasonable basis to believe their statements regarding Arctic Cat inventory were true when made. ¶ 56.

Lead Plaintiff would also have confronted risks to establishing loss causation and damages. ¶ 57. On these issues, Lead Plaintiff would have to prove (through expert testimony) that the revelation of the alleged fraud through the alleged corrective disclosures proximately caused the declines in the price of Textron common stock on the two alleged disclosure dates, and that any other information released and absorbed by the market on those days played no role in the price declines or could be quantified and excluded from Lead Plaintiff's loss calculations. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants would contend, with the help of their experts, that the price declines on each of the alleged corrective disclosure dates were caused, in whole or in substantial part, by information unrelated to the alleged inventory misrepresentations and that Lead Plaintiff cannot establish loss causation through stock price increases following any of the alleged misrepresentations. ¶ 57. Due to the complexities of establishing loss causation and damages, both sides would be required to rely on expert testimony at trial, and this element of Lead Plaintiff's claims would be reduced to an uncertain battle of experts at trial. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ("Undoubtedly, the Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky 'battle of the experts' and the 'jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.'"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "battle of experts, it is virtually impossible

to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

Even if Lead Plaintiff defeated Defendants' summary judgment motions and was successful against Defendants at trial, Lead Plaintiff's efforts in establishing its claims would, in all likelihood, not end with a judgment at trial, but would continue through one or more levels of appellate review. *See In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Thus, in complex litigation such as this, even a victory at the trial stage does not guarantee ultimate success. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (following plaintiff verdict after four-week trial, court granted defendants' post-trial motion for judgment as a matter of law on loss causation grounds, which judgment was affirmed on appeal); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 524, 533 (S.D.N.Y. 2011) (after verdict for class plaintiffs, the district court granted judgment for defendants on claims by investors in Vivendi's ordinary shares based on change of law announced in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).[8]

---

[8]      *See also e.g.*, *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom.*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after eleven years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiff received nothing).

Despite the difficulty of the issues raised and the risks faced, Lead Counsel has secured a favorable result for the Settlement Class while avoiding the risks and delays of continued litigation. As a result, this factor strongly supports the requested fee award.

### C.    The Risks of the Litigation Support the Requested Fee

The risk of litigation is one of the most important *Goldberger* factors. 209 F.3d at 54; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees"). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

As discussed above and in the Fox Declaration, Lead Counsel faced substantial risks in establishing Defendants' liability and damages. ¶¶ 50-64. In the face of these uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. "In numerous class actions,

including complex securities cases, plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever." *Marsh & McLennan*, 2009 WL 5178546, at \*18. Unlike defense counsel, who are typically paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for their time or expenses since this case began in 2019. Lead Counsel's assumption of this contingent fee risk and diligent prosecution of the Action further supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at \*27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### D.      The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel respectfully submits that the quality of its representation is evidenced by the favorable result achieved. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *Goldberger*, 209 F.3d at 55; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 358 (S.D.N.Y. 2005) (Cote, J.); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).

In addition, Lead Counsel's substantial experience in complex federal civil litigation, particularly in the area of securities class actions (*see* Ex. 4-A) clearly benefitted the Settlement Class and aided in the efficient prosecution of the Action. *See In re WorldCom*, 388 F. Supp. 2d at 359 ("If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class.").

15

The quality of opposing counsel is also relevant here. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Lead Counsel faced talented adversaries in this Action. Counsel for Defendants included the prominent defense firm Kirkland & Ellis LLP. In the face of this skilled opposition, Lead Counsel was able to develop a case that was sufficiently strong to reach discovery and settle on terms favorable to the Settlement Class. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 417 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) ("The quality of Plaintiffs' representation is evident from the fact that Plaintiffs survived motions to dismiss filed by some of the nation's preeminent law firms[,]" including Kirkland & Ellis LLP). Lead Counsel's hard work and the favorable result strongly support the requested fee award.

### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010) (quoting *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009)). As discussed in detail in Section II(A), *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.    Public Policy Considerations Support the Requested Fee

The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also*

16

*Tellabs*, 551 U.S. at 318-19 (noting that the Supreme Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Thus, a strong public policy favors rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Lead Counsel's fee and expense application.

Moreover, courts in this circuit have found that "public policy considerations support[] the [fee] award" when a large public pension fund, serving as lead plaintiff, "conscientiously supervised the work of lead counsel, and had given its endorsement to the fee request." *EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007).

Here, the 25% fee requested has been approved by the Lead Plaintiff, a sophisticated institutional investor that is the type of fiduciary Congress envisioned when it enacted the PSLRA.[9] Lead Plaintiff IWA is an institutional investor that manages billions of dollars in assets for the benefit of tens of thousands of members. Ex. 6 ¶ 1. As detailed below and in the Declaration of

---

[9]    Congress enacted the PSLRA in large part to encourage investors with a significant financial stake in the outcome of a securities class action to assume control of the litigation and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *See* H.R. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731.

17

Mark Guiton in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses dated October 13, 2022 (the "Guiton Declaration," Ex. 6), IWA actively supervised the prosecution of the Action from its commencement through settlement, including traveling to and attending a Court hearing in November 2019 and attending the remote mediation session in March 2022. Ex. 6 ¶ 8. Based on its involvement in the Action, IWA has evaluated Lead Counsel's fee request and believes that it is fair and reasonable and warrants approval by the Court. Ex. 6 ¶ 6.

## IV.    THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request. First, through October 13, 2022, the Claims Administrator has mailed 92,940 copies of the Notice Packet to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $125,000 in expenses, which may include the expenses of Lead Plaintiff directly related to its representation of the Settlement Class. ¶¶ 44-46. Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*. ¶ 42. While the time to object to the Fee and Expense Application does not expire until October 28, 2022, to date no objections or requests for exclusion have been received. ¶¶ 47-48. Lead Counsel will address any objections that are submitted in its reply papers, which will be filed on November 11, 2022.

## V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

In addition to a reasonable attorneys' fee, Lead Counsel respectfully seeks reimbursement in the amount of $82,790.80 for litigation expenses reasonably incurred by Lead Counsel in connection with prosecuting the claims against Defendants. ¶¶ 94-104. These expenses are

properly recoverable by counsel. *See In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

The largest component of Lead Counsel's expenses was Lead Plaintiff's experts and consultants in the amount of $39,708.75. ¶¶ 96, 98. As detailed in the Fox Declaration, Lead Counsel utilized experts to assist in developing the claims asserted in the amended complaints, assess loss causation and classwide damages in preparation for settlement negotiations, and develop the Plan of Allocation after a Settlement was reached. ¶ 98. Another significant expense was the cost of the mediation services of Greg Danilow Esq. ($18,000.00, *see* ¶¶ 96, 99), which represented Lead Plaintiff's half of the total fee for his assistance in resolving the litigation. Lead Counsel also incurred expenses for the cost of digital legal research services in connection with its legal research conducted over the course of the Action using Westlaw and PACER ($15,036.87, *see* ¶¶ 96, 100). The other expenses for which Lead Counsel seeks payment include: (i) the costs of travel; (ii) appellate filing services; (iii) filing fees; (iv) the cost of hosting a document database containing Lead Plaintiff's and Defendants' document productions; (v) transcript fees; and (vi) postage. ¶¶ 96, 101-103. All of the foregoing costs and expenses were necessarily incurred for the effective prosecution of the matter and thus, reimbursement of these expenses is reasonable and appropriate.

The Notice informed potential Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $125,000, including

19

reimbursement of Lead Plaintiff's expenses directly incurred in its representation of the Settlement Class. Ex. 2-A at ¶ 5. The total amount of expenses requested is below that amount and, to date, there has been no objection to the request for expenses. ¶ 48; Ex. 2 at ¶ 15.

## VI.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT IS APPROPRIATE UNDER THE PSLRA

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Congress specifically acknowledged the importance of awarding appropriate reimbursement to class representatives. *See* H.R. Rep. No. 104-369, at 36 *as reprinted in* 1995 U.S.C.C.A.N. 730, 734 ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the court discretion to award fees."). As detailed in the Guiton Declaration, Lead Plaintiff is seeking $9,233.48 (Canadian $12,664.96) in reimbursement for expenses directly related to its representation of the Settlement Class in the Action. Ex. 6, ¶¶ 7-8.

Numerous cases have approved reasonable payments to compensate class representatives for the time and effort devoted by them. *See, e.g., In re WorldCom*, 388 F. Supp. 2d at 359 (finding "[r]eimbursement of Lead Plaintiff's expenses is appropriate" and awarding reimbursement of $11,063.54); *In re Facebook*, 343 F. Supp. 3d at 418 (approving reimbursement to lead plaintiff of $56,792.53 for time and expenses in the litigation); *In re Am. Int'l Grp., Inc.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf

of [the] class"); *Marsh & McLennan*, 2009 WL 5178546, at *21 (awarding a combined $214,657 to two institutional lead plaintiffs). Here, Lead Plaintiff IWA, through its Chief Executive Officer, has devoted at least 112 hours to the Action, which included time spent, *inter alia*: (i) conferring with Lead Counsel on a regular basis regarding counsel's strategy for the prosecution and eventual settlement of the case, among other subjects; (ii) reviewing pleadings, briefs, and other material documents filed throughout the case; (iii) reviewing and producing documents in response to Defendants' requests for production of documents; (iv) traveling to and attending the Court hearing on IWA's motion for appointment as lead plaintiff and remotely attending the mediation session with Mr. Greg Danilow on March 11, 2022; and (vi) analyzing and approving the proposed Settlement. Ex. 6 ¶¶ 4, 8. This is time that Mr. Guiton was unable to devote to his regular duties on behalf of IWA.

As noted above, the Notice informed investors that Lead Plaintiff may seek reimbursement of its expenses and there have been no objections received to date. Lead Counsel therefore respectfully submits that the $9,233.48 (Canadian $12,664.96) sought, based on Lead Plaintiff's active involvement in the Action from inception to settlement, is eminently reasonable and should be granted.

## VII.   CONCLUSION

For the reasons stated herein and in the Fox Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Fund; approve reimbursement of Lead Counsel's Litigation Expenses in the amount of $82,790.80; and reimbursement of Lead Plaintiff's time and expenses in the amount of $9,233.48 (Canadian $12,664.96).

Dated: October 14, 2022                    By: */s/ Frederic S. Fox*
                                           Frederic S. Fox
                                           Donald R. Hall

Melinda Campbell
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the proposed Settlement Class*

22