**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Textron Inc. Securities Litigation | CASE NO.: 1:19-CV-7881-DC |

**DECLARATION OF FREDERIC S. FOX IN SUPPORT OF**
**(1) LEAD PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT AND PLAN**
**OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AWARD OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF EXHIBITS ..................................................................................................... iii

I.      THE RECOVERY ACHIEVED ............................................................................... 2

II.     FACTUAL SUMMARY OF LEAD PLAINTIFF'S CLAIMS AGAINST
        DEFENDANTS ........................................................................................................ 5

III.    PROCEDURAL HISTORY OF THE ACTION ....................................................... 5

        A.      IWA Was Appointed Lead Plaintiff ............................................................ 6

        B.      Lead Plaintiff Investigated, Drafted, and Filed the First Amended
                Complaint .................................................................................................... 6

        C.      Defendants Moved to Dismiss the First Amended Complaint ..................... 7

        D.      Lead Plaintiff Investigated Further, Then Drafted and Filed the Second
                Amended Complaint .................................................................................... 7

        E.      Defendants Moved to Dismiss the SAC ...................................................... 7

        F.      Lead Plaintiff Successfully Appealed the Dismissal of the Alleged
                Inventory Misrepresentations ...................................................................... 8

        G.      The Court Entered A Scheduling Order Providing For An Early
                Mediation Effort ......................................................................................... 8

        H.      Settlement Negotiations and Terms of the Settlement .................................. 9

        I.      Lead Plaintiff Moved for Preliminary Approval of the Settlement ............ 10

IV.     NOTICE OF THE SETTLEMENT AND SETTLEMENT FAIRNESS
        HEARING WAS PROVIDED TO CLASS MEMBERS ........................................ 11

V.      THE SETTLEMENT IS A FAVORABLE RESULT FOR THE CLASS IN
        LIGHT OF THE RISKS OF CONTINUING LITIGATION ................................. 12

        A.      Risks Related to Proving Defendants' Liability ........................................ 14

        B.      Risks Related to Obtaining and Maintaining Class Certification Through
                Trial .......................................................................................................... 15

        C.      Risks Related to a Post-Judgment Appeal By Defendants ......................... 16

VI.     THE PLAN OF ALLOCATION ............................................................................ 17

VII.    LEAD PLAINTIFF'S COMPLIANCE WITH THE PRELIMINARY
        APPROVAL ORDER.................................................................................................... 19

VIII.   LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
        EXPENSES................................................................................................................... 20

        A.      The Requested Fee is Fair and Reasonable........................................................ 20

                1.      The Considerable Time and Labor Expended by Lead Counsel .............. 22

                2.      The Risks of the Litigation ..................................................................... 22

                3.      Quality of Representation ....................................................................... 23

                4.      Awards in Similar Cases.......................................................................... 24

                5.      The Reaction of the Class ....................................................................... 24

        B.      The Litigation Expenses Are Reasonable and Were Necessarily Incurred
                to Achieve the Benefit Obtained........................................................................ 25

IX.     LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF TIME AND
        EXPENSES................................................................................................................... 28

X.      CONCLUSION............................................................................................................. 28

**TABLE OF EXHIBITS**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| Ex. 1 | Cornerstone Research, Securities Class Action Settlements—2021 Year in Review, at 6 (2022). |
| Ex. 2 | Declaration of Adam D. Walter Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated October 13, 2022. |
| Ex. 3 | Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (NERA 2022). |
| Ex. 4 | Declaration of Melinda Campbell on Behalf of Kaplan Fox & Kilsheimer LLP in Support of Application of Lead Counsel for an Award of Attorneys' Fees and Expenses, with Exhibits: (A) Firm Resume; (B) Time and Lodestar Report; and (C) Expense Report. |
| Ex. 5 | Slip opinion referenced in the brief and declaration. |
| Ex. 6 | Declaration of Mark Guiton in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses. |

I, Frederic S. Fox, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.      I am a partner in the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox" or "Lead Counsel").[1] I am admitted to the bar of the State of New York and am in good standing in it.  Kaplan Fox is the Court-appointed Lead Counsel and Class Counsel for Court-appointed Lead Plaintiff and Class Representative, IWA Forest Industry Pension Plan ("Lead Plaintiff").  ECF No. 34.

2.      I have been prosecuting this action since its inception in 2019. I am familiar with its proceedings and have personal knowledge of the matters set forth below based upon my supervision of, or participation in, all material respects of the Action.

3.      I submit this declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that the Court preliminarily approved by its Order dated August 23, 2022 (the "Preliminary Approval Order").  ECF No. 79.  The Settlement will resolve all claims asserted in the Action on behalf of the Settlement Class, which is defined as "all persons or entities who purchased or otherwise acquired Textron common stock on the NYSE or other U.S. exchanges or in a U.S. transaction between January 31, 2018 and December 6, 2018, inclusive." Stip. at ¶ 1(oo).[2]

4.      This declaration is also submitted in support of approval of Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses, including the reasonable expenses

---

[1]      Unless otherwise indicated here, capitalized terms have the same definitions as in the Stipulation and Agreement of Settlement (the "Stipulation") (ECF No. 71-1).

[2]      Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Textron during the Class Period;  (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Textron's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

incurred by the Lead Plaintiff.

5.      For the reasons set forth below and in the accompanying memoranda,[3] Lead Plaintiff and Lead Counsel respectfully submit that (i) the terms of the Settlement are fair, reasonable and adequate in all respects and should be approved by the Court; (ii) the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) the Fee and Expense Application is supported by the facts and the law and should be granted in all respects.

## I.      THE RECOVERY ACHIEVED

6.      The Settlement provides a significant recovery of seven million, nine hundred thousand dollars ($7,900,000.00) to resolve the Action against Defendants, as memorialized in the Stipulation. The Settlement is the result of three years of litigation and a vigorously-negotiated settlement with the assistance of an experienced mediator, Greg Danilow, Esq. of Phillips ADR. Based on Lead Plaintiff's consulting expert's estimate of aggregate damages, the Settlement Amount represents a recovery of 9% of the Settlement Class's damages, which is above the 4.9% median recovery for Rule 10b-5 case settlements in 2021. *See* Cornerstone Research, *Securities Class Action Settlements—2021 Year in Review*, at 6 (2022), Ex. 1.

7.      Before agreeing to the Settlement, Lead Counsel diligently litigated the matter, including, *inter alia*, (i) conducting a thorough investigation of potential claims against Defendants; (ii) reviewing and analyzing the Company's filings with the United States Securities and Exchange Commission ("SEC"), press releases, and representations to investors and analysts on conference calls and investor conferences; (iii) compiling and analyzing documents to prepare

---

[3]      In conjunction with this Declaration, Lead Plaintiff and Lead Counsel are also submitting (i) the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum") and (ii) the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fee Memorandum").

and file two detailed amended complaints; (iv) appealing the dismissal of the Action and achieving a partial reversal and remand; (v) engaging in expedited, preliminary discovery efforts, including the review of key categories of documents obtained from Defendants and the review and production of various categories of documents on behalf of Lead Plaintiff; (vi) consulting extensively with experts in the areas of loss causation, damages, and market efficiency; and (vii) participating in lengthy and complicated mediation discussions, including the preparation and exchange of mediation statements, with the assistance of an independent and neutral mediator. Thus, by the time the Settlement was reached, Lead Counsel had developed a solid understanding of the strengths and weaknesses of the case.

8. As described in the Declaration of Mark Guiton in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses (the "Guiton Declaration," attached as Exhibit 6), Lead Plaintiff also had a good understanding of the strengths and weaknesses of the case by the time of settlement. Lead Plaintiff was an active and informed participant in the litigation and, among other things, (i) regularly communicated with Lead Counsel regarding the posture and progress of the Action; (ii) received all significant pleadings and motions filed in the Action; (iii) received or discussed significant decisions in the Action; (iv) participated in the remote mediation session and consulted with Lead Counsel throughout the subsequent settlement negotiations; and (v) evaluated and approved the proposed Settlement. *Id*. at ¶¶ 4, 8.

9. The Settlement was ultimately accomplished through arm's-length settlement discussions over a period spanning two months, facilitated by a highly experienced mediator chosen by the Settling Parties—Greg Danilow, Esq. The mediation process included briefing followed by a remote mediation session with attorneys representing each side focusing on liability

3

and damages. Additionally, Lead Counsel engaged and devoted significant time and resources to meeting and conferring with an expert damages consultant in order to establish an appropriate model for, and calculation of, classwide damages in this Action. After the initial mediation session, there were multiple follow-up communications. And even after reaching the agreement in principle, the Settling Parties continued to negotiate for an additional month over the specific terms of the Stipulation.

10. Lead Plaintiff obtained this substantial recovery for the Settlement Class despite the significant risks inherent in complex securities class actions generally, and the significant case-specific risks in prosecuting the Action against Defendants. Legal research, a review of the discovery record, and the Parties' mediation and settlement negotiations informed Lead Plaintiff and Lead Counsel that, while the case against Defendants was meritorious, there were also risks that had to be carefully evaluated in determining what course of action was in the best interest of the Settlement Class (*i.e.,* whether to settle and on what terms, or to continue to litigate through class certification, summary judgment, trial, and likely appeal).

11. As summarized below, while Lead Plaintiff's allegations are supported by legal authority as well as the evidence obtained via discovery, victory against Defendants was not guaranteed. There were uncertainties with respect to Lead Plaintiff's ability to overcome the factual and legal defenses marshalled by the experienced lawyers representing Defendants.

12. Lead Counsel unequivocally believes, based on our knowledge and understanding of the claims and defenses asserted in this Action, that the $7.9 million Settlement is a good result for the Settlement Class, particularly when considered against the risk of a much smaller recovery—or even no recovery—after a trial of the Action, and the inevitable and lengthy appeals that would follow success at trial, if any.

13.     As set forth in the Guiton Declaration, Lead Plaintiff, a sophisticated institutional investor that manages billions of dollars in pension funds, endorses the Settlement.  *See* Ex. 6. ¶¶ 1, 5.

14.     For all of the reasons set forth herein, including the favorable result obtained and the significant litigation risks, we respectfully submit that the Settlement and Plan of Allocation are "fair, reasonable and adequate" in all respects and should be approved, and that Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be granted.

## II.    FACTUAL SUMMARY OF LEAD PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

15.     Lead Plaintiff alleged that Defendants violated the federal securities laws by misrepresenting and omitting material information concerning their: (a) failure to meaningfully reduce non-current Arctic Cat inventory; (b) failure to integrate Arctic Cat; (c) inability to achieve profitability in 2018; and (d) impairment of goodwill due to the foregoing.

16.     As a result of Defendants' alleged material misrepresentations and omissions, Lead Plaintiff alleged that the price of Textron's publicly-traded common stock was artificially inflated during the Class Period. When the truth about the glut of aged Arctic Cat inventory and discounting was revealed through disclosures on October 18, 2018 through December 6, 2018, Textron's share price fell dramatically, causing Lead Plaintiff's and the Settlement Class's damages.

## III.    PROCEDURAL HISTORY OF THE ACTION

17.     This securities fraud class action was commenced with the filing of a complaint on August 22, 2019. ECF No. 1.

**A.    IWA Was Appointed Lead Plaintiff**

18.    On October 21, 2019, competing motions to consolidate the cases and appoint lead plaintiff and lead counsel were filed by: (a) IWA; and (b) Building Trades Pension Fund of Western Pennsylvania and Christopher Freeman (ECF Nos. 11-17).

19.    Following responsive briefing by IWA (*see* ECF Nos. 25-27), on November 13, 2019, the Court entered a Case Management Order appointing IWA as Lead Plaintiff for the proposed class and approved Lead Plaintiff's selection of Kaplan Fox & Kilsheimer LLP as Lead Counsel pursuant to the PSLRA. ECF No. 34. The order also set the schedule for filing an amended consolidated class complaint, Defendants' answers or motions, if any, and Lead Plaintiff's response or further amendment of the pleadings.

**B.    Lead Plaintiff Investigated, Drafted, and Filed the First Amended Complaint**

20.    Lead Counsel's pre-filing investigation included, among other things, a detailed review and analysis of (i) Textron's public filings with the SEC; (ii) research reports by securities and financial analysts; (iii) transcripts of investor conference calls; (iv) press releases and media reports; and (v) economic analyses of Textron's stock price movements and pricing data.

21.    Additionally, Lead Counsel's in-house investigator searched publicly-available databases and compiled information relevant to the potential claims.

22.    Lead Counsel also retained a consulting expert in the areas of market efficiency and damages to assist in developing the claims that would ultimately be asserted against Defendants.

23.    On December 24, 2019, Lead Plaintiff filed an amended complaint, asserting claims under §§ 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as described above. ECF No. 35.

6

### C.      Defendants Moved to Dismiss the First Amended Complaint

24.      On January 24, 2020, Defendants moved to dismiss the Complaint. ECF Nos. 36-38. Defendants argued that neither actionable misrepresentations nor scienter were adequately alleged. Specifically, they contended that the alleged misstatements about inventory and integration were not false or misleading, and that the allegations did not establish motive or recklessness as to any of the Defendants.

### D.      Lead Plaintiff Investigated Further, Then Drafted and Filed the Second Amended Complaint

25.      Pursuant to the Case Management Order, instead of responding to the motion to dismiss, Lead Plaintiff filed the Second Amended Consolidated Class Action Complaint for Violation of Federal Securities Laws (the "SAC") on February 14, 2020. ECF No. 39. Based on further investigation, the SAC added allegations to address certain arguments raised in Defendants' motion to dismiss the first amended complaint.

### E.      Defendants Moved to Dismiss the SAC

26.      On March 6, 2020, Defendants filed a motion to dismiss the SAC, once again arguing that neither actionable misrepresentations nor scienter were adequately alleged. ECF Nos. 41-43. Lead Plaintiff opposed the motion on March 27, 2020 (ECF No. 44), and Defendants replied on April 10, 2020 (ECF No. 46).

27.      On July 20, 2020, the Court dismissed the SAC on the grounds that there were no actionable misstatements or omissions alleged. ECF No. 50. Specifically, the Court found that: (a) the alleged misstatements regarding inventory were not false or misleading because they concerned inventory from 2016 or earlier, not the 2015-2017 inventory alleged; (b) the statements regarding 2018 performance were unactionable statements of opinion and were protected by the PSLRA safe harbor; (c) alleged misrepresentations regarding integration were not misleading in

the context in which they were made; and (d) the alleged misrepresentation about goodwill was an unactionable opinion. The Court did not reach the issue of scienter.

### F.    Lead Plaintiff Successfully Appealed the Dismissal of the Alleged Inventory Misrepresentations

28.     On August 18, 2020, Lead Plaintiff timely filed a notice of appeal. ECF No. 53. Lead Plaintiff filed its opening brief and the joint appendix on November 30, 2020, arguing that the Court erred in dismissing each of the four categories of alleged misrepresentations. *See* Brief and Special Appendix for Plaintiff-Appellant, *IWA Forest Industry Pension Plan v. Textron, Inc.*, No. 20-2746 (2d Cir. Nov. 30, 2020) (ECF No. 42). Defendants opposed on March 1, 2021 (*see* Brief for Defendants-Appellees, *IWA Forest Industry Pension Plan v. Textron, Inc.*, No. 20-2746 (2d Cir. Mar. 1, 2021) (ECF No. 54)), and Lead Plaintiff replied on March 22, 2021 (*see* Reply Brief for Plaintiff-Appellant, *IWA Forest Industry Pension Plan v. Textron, Inc.*, No. 20-2746 (2d Cir.  Mar. 22, 2021) (ECF No. 63)). Oral argument on the appeal was held on June 1, 2021.

29.     On September 17, 2021, the Second Circuit reversed the dismissal of the inventory-related misrepresentations and affirmed dismissal of the other alleged misrepresentations, remanding the case for further proceedings. ECF No. 54.

### G.    The Court Entered A Scheduling Order Providing For An Early Mediation Effort

30.     Pursuant to the Court's orders (ECF Nos. 56 and 58), the Parties negotiated and submitted a proposed schedule on November 3, 2021 (ECF No. 59), which provided for targeted discovery and an early attempt at mediation given the more limited nature of the remaining claims.

31.     On November 9, 2021, after a pretrial conference pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court entered a scheduling order setting deadlines for: (a) submission of a confidentiality agreement and ESI protocol, if needed, by November 19, 2021; (b) completion of private mediation by March 2022; (c) submission by Lead Plaintiff of a letter proposing a class

certification briefing schedule by April 8, 2022; (d) fact discovery completion by September 29, 2022; (e) expert reports by October 21, 2022, rebuttal reports by November 18, 2022, and expert depositions by December 21, 2022; and (f) summary judgment briefing in January and February of 2023. ECF No. 60.

32.     Pursuant to the order, the Parties submitted a stipulated proposed confidentiality order on November 19, 2021 (ECF No. 62), which was so-ordered on November 29, 2021 (ECF No. 63).

33.     The Parties exchanged targeted document requests in November 2021, with Defendants requesting five categories of documents and Lead Plaintiff requesting ten categories relating to key facts for establishing liability. The Parties subsequently exchanged correspondence and met and conferred over disagreements about the scope of the requests.

34.     In response to Defendants' requests, Lead Counsel gathered, reviewed, and produced responsive documents on February 18, 2022. Lead Counsel received Defendants' production the same day, and promptly commenced reviewing the same.

**H.     Settlement Negotiations and Terms of the Settlement**

35.     The Parties engaged Greg Danilow, Esq. of Phillips ADR, a highly experienced mediator, to assist in their discussions of a potential negotiated settlement. On March 1, 2022, the Parties exchanged mediation statements with each other and Mr. Danilow, setting forth the Parties' respective views regarding the merits of the Action, including the evidence adduced, Defendants' defenses, and issues relating to damages. On March 11, 2022, the Parties and their counsel met remotely with Mr. Danilow for a mediation session. Despite extended negotiations, which included discussion of the Parties' merits and damages arguments, a settlement was not reached.

36.     Thereafter, Mr. Danilow and the Parties engaged in multiple follow-up communications over the course of two months. Throughout this process, Lead Counsel conferred

with Lead Plaintiff concerning all material developments. On May 5, 2022, the Parties reached an agreement in principle to settle the Action and entered into a Term Sheet setting forth the material terms of their agreement.

37.     The Parties subsequently negotiated the Stipulation over the course of seven weeks, finally executing the Stipulation on June 23, 2022.[4] The Stipulation sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims, in return for the value of Seven Million Nine Hundred Thousand Dollars ($7,900,000.00), to be paid by or on behalf of Defendants for the benefit of the Settlement Class.

## I.     Lead Plaintiff Moved for Preliminary Approval of the Settlement

38.     Upon executing the Term Sheet and while negotiations of the draft stipulation were underway, Lead Counsel began to draft a motion for preliminary approval of the proposed settlement, the proposed notices to the Class, and the claim form.

39.     On July 7, 2022, Lead Plaintiff filed the motion for preliminary approval and all supporting papers. ECF Nos. 69-71.

40.     An oral argument on Lead Plaintiff's motion for preliminary approval of the Settlement was held on July 28, 2022. During the hearing, the Court instructed Lead Counsel to shorten the length of the Notice to approximately ten pages and indicated particular portions of the

---

[4]     Additionally, the Parties entered into a confidential Supplemental Agreement regarding requests for exclusion, dated June 23, 2022 ("Supplemental Agreement"). *See* Stip. ¶ 35. The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental Agreement ("Opt-Out Threshold"). As is standard practice in securities class actions, the Supplemental Agreement has not been made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. However, pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

Notice that may be removed. Pursuant to the Court's order, Lead Counsel submitted the revised Proposed Order Preliminarily Approving the Settlement (with revised Notice attached) and a revised proposed schedule on August 15, 2022. ECF No. 78. The preliminary approval order was signed on August 23, 2022 (and entered on August 24, 2022) ("Preliminary Approval Order") (ECF No. 79) and the schedule for the motion for final approval of the Settlement and the Fairness Hearing were signed and entered on August 24, 2022 (ECF No. 80).

## IV.    NOTICE OF THE SETTLEMENT AND SETTLEMENT FAIRNESS HEARING WAS PROVIDED TO CLASS MEMBERS

41.    On September 21, 2022, pursuant to the Preliminary Approval Order, the court-appointed claims administrator A.B. Data, Ltd. ("A.B. Data") began mailing the Notice of Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release form ("Claim Form" and, together with the Notice, the "Notice Packet") to Class Members. *See* Declaration of Adam D. Walter Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Mailing Declaration") ¶ 5, attached as Exhibit 2 hereto.

42.    On September 26, 2022, pursuant to the Preliminary Approval Order, A.B. Data caused the Summary Notice to be published both in *Investor's Business Daily* and in *PR Newswire*. *Id.* at ¶ 9.

43.    On September 21, 2022, A.B. Data activated a public access website for the Action, (www.TextronSecuritiesLitigation.com), publishing significant documents online including the Notice Packet, Stipulation, and Complaint. *Id.* at ¶¶ 11-12.

44.    As of October 13, 2022, a total of 92,940 Notice Packets have been mailed by A.B. Data to potential Settlement Class Members and their nominees. *Id.* at ¶ 8.

11

45.     The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit a valid and timely Claim Form pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval. *See generally*, Ex. 2-A. Further, the Notice informed Settlement Class Members of the nature of the litigation, the reasons for settlement, and the proposal to distribute the Net Settlement Fund in accordance with a proposed Plan of Allocation, which was posted on the settlement website. *Id.* at pp. 1-2. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Settlement Fairness Hearing. *Id.* at pp. 2-3.

46.     The Notice also informed Settlement Class Members that Lead Counsel would seek attorneys' fees of no more than 25% of the Settlement Fund, plus reimbursement of out-of-pocket litigation expenses not to exceed $125,000, which may include the costs and expenses of Lead Plaintiff directly related to its representation of the Settlement Class. *Id.* at p. 2.

47.     Pursuant to the Preliminary Approval Order, Settlement Class Members who wish to object to the Settlement, the Plan of Allocation, or the Request for Attorneys' Fees and Expenses must file and serve such objections no later than October 28, 2022. Ex. 2-A at pp. 3, 7.

48.     To date, Lead Counsel and A.B. Data have received no requests for exclusion and no objections. Ex. 2 ¶¶ 14-15. If any objections are received, Lead Counsel will respond to any such objections in Lead Plaintiff's reply, which is due to be filed on November 11, 2022.

## V.     THE SETTLEMENT IS A FAVORABLE RESULT FOR THE CLASS IN LIGHT OF THE RISKS OF CONTINUING LITIGATION

49.     Based upon Lead Counsel's investigation, coupled with our review and understanding of the document discovery obtained in the Action, we believe there is evidence to support Lead Plaintiff's claims. While we think Lead Plaintiff would have prevailed, Lead Plaintiff

12

and Lead Counsel are cognizant of the risks of continued prosecution against Defendants, and Defendants continue to deny liability. All of those risks were carefully considered in evaluating whether the Stipulation is fair, reasonable, and adequate, and in the best interests of Settlement Class Members.

50.     The Settlement value of $7.9 million represents a significant recovery. Based on Lead Plaintiff's economics expert estimate of Class-wide damages, the Settlement represents approximately 9% of estimated damages, which is well above the 4.9% median recovery for Rule 10b-5 case settlements in 2021. *See* Cornerstone Research, *Securities Class Action Settlements— 2021 Year in Review*, (2022), Ex. 1 at 6.

51.     Among the litigation risks informing Lead Plaintiff's decision to settle the Action were the risks to obtaining class certification and proving the Section 10(b) and Section 20(a) claims against Defendants. The risks of prevailing on summary judgment and ultimately proving these claims at trial were weighed based on Lead Counsel's experience, understanding of the relevant case law, and understanding of the fact record.

52.     To prevail at trial, Lead Plaintiff would have to prove by a preponderance of the evidence the following elements of a Section 10(b) claim: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (citations omitted).

53.     Here, Lead Plaintiff faced a number of risks related to its claims, including the risks that Lead Plaintiff (i) would not be able to prove liability, *i.e.*, that Defendants made material misstatements and omissions with scienter that caused Lead Plaintiff's and the Settlement Class's

damages; (ii) would not be able to secure and maintain class certification throughout the proceedings; and (iii) would lose on appeal. These risks are discussed further below.

### A.      Risks Related to Proving Defendants' Liability

54.      Defendants' motion to dismiss briefing provided Lead Plaintiff with a preview of the arguments against liability that Defendants would undoubtedly have raised at summary judgment and trial.

55.      Defendants strongly disputed that they made any material misrepresentations or omissions, arguing that their statements concerned only model year 2016 and older inventory which had, in fact, been significantly reduced before the start of the Class Period. The Court initially credited this argument and dismissed the claim, and Lead Plaintiff faced risks that discovery may strengthen Defendants' argument or that a jury may see the issue the same way as the Court did.

56.      Defendants also challenged scienter, which is notoriously one of the more difficult elements of a securities fraud claim to prove. Specifically, Defendants argued that the allegations regarding the Individual Defendants' stock sales are insufficient to establish a motive to defraud, and that Defendants had a reasonable basis to believe their statements regarding Arctic Cat inventory were true when made.

57.      Lead Plaintiff would also have confronted considerable challenges in establishing loss causation and damages. In particular, Defendants would have argued that the stock price drop in response to the alleged corrective disclosures on October 18, 2018 and December 6, 2018 were caused in whole or substantial part by factors unrelated to the alleged inventory misrepresentations. They would also argue that Lead Plaintiff cannot establish loss causation through stock price increases following any of the alleged misrepresentations. If any of these arguments prevailed at

14

class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.

58.     Moreover, there is also a substantial risk that an intervening change in the law could result in the dismissal of a case after significant effort has been expended. The Supreme Court has heard several securities cases in recent years, often announcing holdings that changed or clarified the law in the midst of long-running cases. *See Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015); *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *Comcast Corp. v Behrand*, 133 S. Ct. 1426 (2013); *Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247 (2010). As a result, many cases have been lost after the plaintiffs have invested thousands of hours in briefing and discovery. For example, in *In re Vivendi Universal, S.A. Sec. Litig.,* 765 F. Supp. 2d 512, 524, 533 (S.D.N.Y. 2011), after a verdict for class plaintiffs finding Vivendi made reckless misrepresentations, the district court granted judgment for defendants as to the claims by investors in Vivendi's ordinary shares based on the change in the law announced in *Morrison* and amended the class definition accordingly.

59.     In sum, Lead Plaintiff faced numerous hurdles to proving liability in this Action. While Lead Counsel is confident in its position refuting these arguments, the outcome of these issues is far from certain. Such risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is reasonable.

**B.     Risks Related to Obtaining and Maintaining Class Certification Through Trial**

60.     At the time that the Settlement was reached, Lead Plaintiff had not moved for class certification. However, the planned class certification motion would have entailed substantial expert testimony and likely expert challenges related to the factors for establishing the presumption

15

of reliance under the fraud-on-the-market theory. On this basis, they would contend that reliance could not be presumed under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and that individual issues would therefore predominate over common ones, precluding class certification. While Lead Plaintiff is confident in its arguments supporting class certification and its appointment as class representative, success was by no means guaranteed.

61.     Further, even if the Court certified the Class, Defendants would still have multiple avenues to challenge class certification. For example, Defendants could seek immediate appeal pursuant to Federal Rule of Civil Procedure 23(f), precipitating additional rounds of briefing. Alternatively, Defendants could move the Court to decertify the Class before trial, as Federal Rule of Civil Procedure 23(c) authorizes a court to review and decertify a class at any time. Additionally, future developments in case law are unpredictable, and may also risk class decertification.

### C.     Risks Related to a Post-Judgment Appeal By Defendants

62.     Even if Lead Plaintiff prevailed at summary judgment and at trial, Defendants would likely have appealed the judgment—leading to many additional months, if not years, of further litigation. On appeal, Defendants would have renewed their numerous arguments as to why Lead Plaintiff had failed to establish liability and damages, thereby exposing Lead Plaintiff to the risk of having any favorable judgment reversed or reduced below the Settlement value.

63.     The risk that even a successful trial could be overturned by a later appeal is very real in securities fraud class actions. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice after six years of litigation); *Anixter v. Home-Stake*

16

*Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after 22 years of litigation).

64.    In summary, there are numerous risks to litigating this Action through class certification, summary judgment, trial, and appeal. Settlement now avoids these risks and provides a substantial benefit to the Settlement Class without further delay.

## VI.    THE PLAN OF ALLOCATION

65.    Pursuant to the Preliminary Approval Order at paragraph 16, and as set forth in the Notice, all Settlement Class Members who wish to be eligible to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less (i) any Taxes and Tax Expenses, (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid proof Claim Form and all required information to the Court-approved Claims Administrator, A.B. Data, postmarked on or received no later than January 20, 2023.

66.    If approved by the Court, the proposed Plan of Allocation referenced in the Notice and posted on the settlement website will govern how the Net Settlement Fund will be distributed among Authorized Claimants.[5]

67.    The Plan is designed to equitably distribute the Settlement proceeds among Settlement Class Members who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms that are approved for payment. The Plan provides for the calculation of a "Recognized Loss Amount" for each properly documented purchase or acquisition of Textron common stock during the Class Period. A claimant's total Recognized Loss Amount

---

[5]    As defined in Paragraph 1(c) of the Stipulation, an "Authorized Claimant" means a Settlement Class Member who or which submits a Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure dates alleged in the Action, whether and how long the shares were held or sold, and the value of the shares when they were held or sold.

68.    The Recognized Loss formulas are tied to liability and damages. In developing the Plan of Allocation, Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Textron's common stock throughout the Class Period that was purportedly caused by the alleged fraud. An inflation table was created and is included in the Plan of Allocation and will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants. The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms. The Claims Administrator will then determine each eligible claimant's pro rata share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

69.    Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, Lead Counsel will seek Court approval to distribute the Net Settlement Fund in accordance with those determinations and decide any disputed claims determinations.

70.    In sum, the proposed Plan of Allocation, developed in consultation with Lead Plaintiff's consulting expert, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

18

## VII.   LEAD PLAINTIFF'S COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

71.     The Preliminary Approval Order directed that Notice be disseminated to the Class, set the deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application by October 28, 2022, and set a Settlement Fairness Hearing date of November 18, 2022.

72.     The Preliminary Approval Order authorized Lead Counsel to retain A.B. Data as the Claims Administrator in the Action and ordered the mailing of the Court-approved Notice Packet to potential Settlement Class Members within 30 calendar days after the entry of the Preliminary Approval Order (*i.e.*, by September 23, 2022, the "Notice Date"), posting of the Notice, Claim Form, and Summary Notice on the website designated for this Action, www.TextronSecuritiesLitigation.com, on or before the Notice Date, and publishing of the Summary Notice once in the national edition of *Investor's Business Daily* and over the *PR Newswire* no later than ten (10) calendar days after the Notice Date (*i.e.*, by October 3, 2022).

73.     A description of the terms of the Settlement and the proposed Plan of Allocation are set forth in the Notice, which also provides potential Settlement Class Members with, among other things, a description of their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses, and the manner for submitting a Claim Form in order to be eligible to receive a payment from the Settlement.  The Notice informs Settlement Class Members of Lead Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund (which amount includes interest), and for reimbursement of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $125,000.00.

19

74. As set forth in the Mailing Declaration, on September 21, 2022, A.B. Data disseminated 12,411 copies of the Notice Packet to potential Settlement Class Members and nominees by first-class mail. Ex. 2 ¶ 5. As of October 13, 2022, a total of 92,940 Notice Packets have been mailed to potential Settlement Class Members and their nominees. *Id*. ¶ 8.

75. On September 26, 2022, in advance of the deadline set by the Preliminary Approval Order, A.B. Data caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PRNewswire*. *Id.* ¶ 9.

76. The Court-ordered deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application or to request to opt out of the Class is October 28, 2022. To date, A.B. Data has received no requests for exclusion from the Class and no objections to the Settlement, Plan of Allocation or Fee and Expense Request. *Id*. ¶¶ 14-15.

## VIII. LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

77. Concurrent with seeking final approval of the Settlement, Lead Counsel is seeking an award of attorneys' fees of 25% of the Settlement Fund. Further, Lead Counsel is seeking reimbursement for out-of-pocket expenses incurred during the prosecution of the Action, which total $82,790.80.

78. The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum. The primary factual bases for the requested fees and expenses are summarized below.

### A. The Requested Fee is Fair and Reasonable

79. Based on the efforts expended on behalf of the Class, the favorable result achieved, the risks of the litigation and the contingent nature of its representation, Lead Counsel submits that

its request for an award of attorneys' fees in the amount of 25% of the Settlement Fund is justified and should be approved.

80.    As set forth in the accompanying Fee Memorandum, the requested fee is reasonable under either the "percentage" or the "lodestar" method. Lead Counsel's request for a fee award of 25% of the Settlement Fund is well within the range of fees awarded in similar cases, as set forth in the Fee Memorandum. Moreover, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2012-2021, the median attorneys' fee award for settlements of between $5-$10 million was 30%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 3 at 27.

81.    Likewise, the requested fee is reasonable based on a lodestar cross-check. Since the inception of the Action, Lead Counsel has dedicated over 2,312 hours to the investigation, prosecution, and resolution of the claims against Defendants, resulting in a total lodestar of $1,723,744.25. *See* Ex. 4 at ¶ 4, (the Declaration of Melinda D. Campbell on Behalf of Kaplan Fox & Kilsheimer LLP in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses). Applying a lodestar cross-check, the requested fee of 25% of the Settlement Fund (a value of $1,975,000 without interest), yields a multiplier of approximately 1.15 on the value of the time expended by Lead Counsel. As described in the Fee Memorandum, the attorneys' fees sought here are consistent with fees awarded in this jurisdiction and are eminently reasonable in light of the risks undertaken by Lead Counsel.

82.    A true and correct copy of Lead Counsel's time and lodestar report is attached as Exhibit 4-B. The time and lodestar report was prepared from contemporaneous time records regularly prepared and maintained by Lead Counsel. Ex. 4 ¶ 5. The hourly rates for the attorneys

21

and professional support staff included in the schedule are commensurate with the hourly rates charged by lawyers and other professionals of reasonably-comparable skill, experience, and reputation in performing similar services.

### 1. The Considerable Time and Labor Expended by Lead Counsel

83. Lead Counsel undertook time-consuming and risky work to prosecute the claims against Defendants to achieve this Settlement. As detailed above, this Action was settled only after Lead Counsel conducted an extensive investigation into the Class's claims, thoroughly researched the facts and applicable law related to the claims and defenses, prepared and filed two detailed complaints, opposed Defendants' motion to dismiss, appealed and partially reversed the dismissal of Lead Plaintiff's claims, engaged in targeted document discovery, prepared a mediation statement with citations to evidence produced in discovery, attended a remote mediation session, and engaged in additional negotiations over the course of two months.

### 2. The Risks of the Litigation

84. This litigation was undertaken by Lead Counsel on a wholly contingent basis. From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the Action would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of this Action and that funds were available to compensate staff and pay the considerable expenses that cases such as this entail. Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. With a lag time of many years for these cases to typically conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis. Indeed, Lead Counsel has received no compensation during the

22

course of the Action and has advanced or incurred $82,790.80 in expenses in prosecuting the Action for the benefit of the Class.

85.    Lead Counsel also bore the risk that no recovery would be achieved.  There have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiffs' counsel produced no recovery, and hence no fee.

86.    Moreover, for decades the United States Supreme Court (and countless lower courts) have repeatedly and consistently recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Indeed, as recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors, particularly institutional investors, take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

87.    In circumstances such as these, and in consideration of Lead Counsel's hard work and the favorable result achieved, the requested fee of 25% of the Settlement Fund and reimbursement of $82,790.80 in litigation expenses, as detailed below, is reasonable and should be approved.

### 3.    Quality of Representation

88.    Lead Counsel is highly experienced in prosecuting complex litigation, particularly securities class actions, and worked diligently and efficiently in prosecuting this Action. As demonstrated by Lead Counsel's firm resume, attached as Exhibit 4-A, Lead Counsel is among

23

the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in securities cases throughout the country.

### 4.      Awards in Similar Cases

89.      The Settlement of $7.9 million resulted from Lead Counsel's litigation efforts and contentious settlement negotiations, as detailed herein. The Settlement is a favorable recovery to the Class – representing approximately 9% of the recoverable aggregate damages for the claims as estimated by Lead Plaintiff's damages expert.

90.      Additionally, the recovery is well above the 4.9% median recovery in 2021 for settlements of Rule 10b-5 cases. Ex. 1, p. 6.

91.      The requested fee award is also consistent with the attorney fees awarded for other class action settlements that were comparable either in size or as a proportion of recoverable damages. A copy of the slip opinion referenced in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses are attached as Exhibit 5.

92.      Further, as a result of this Settlement, thousands of Settlement Class Members potentially will be eligible to benefit and receive some compensation for their losses and avoid the substantial risk of recovering nothing in the absence of this Settlement.

### 5.      The Reaction of the Class

93.      In accordance with the Preliminary Approval Order, a total of 92,940 Notice Packets have been mailed to date to potential Settlement Class Members and nominees (Ex. 2 ¶ 8) advising them that Lead Counsel would seek attorneys' fees in an amount not to exceed 25% of the Settlement Fund and reimbursement of expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $125 thousand (Ex. 2-A, p. 2).  On September 21, 2022, all of the important documents in this Action including, among others,

24

the Notice, Claim Form, and Summary Notice, were posted on the website designated for this Action, www.TextronSecuritiesLitigation.com. Ex. 2 ¶¶ 11-13. Additionally, the Summary Notice was published on September 26, 2022 in the national edition of *Investor's Business Daily* and over the *PR Newswire*. *Id.* ¶ 9. As noted above, the deadline set by the Court for Settlement Class Members to object to the amount of attorneys' fees and expenses set forth in the Notice has not yet passed, however, to date Lead Counsel is aware of no objections. *See Id.* ¶ 15. If any objections are timely received, Lead Counsel will address them in its reply papers to be filed with the Court on November 11, 2022.

**B.  The Litigation Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

94.  Lead Counsel seeks reimbursement of $82,790.80 for expenses that were reasonable and necessary, and incurred to achieve the benefits obtained on behalf of the Class.

95.  The expenses incurred relating to this case are reflected in the books and records of Lead Counsel, which are maintained in the ordinary course of business. The books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. *See* Ex. 4, ¶¶ 6-7.

96.  A summary of Lead Counsel's expenses is as follows:

| Category | TOTAL |
| --- | --- |
| Experts / Consultants | $39,708.75 |
| Mediation | $18,000.00 |
| Online Research | $15,036.87 |
| Travel/Meals | $5,232.26 |
| Appellate Filing Services (Record Press) | $3,786.32 |
| Filing Fees | $505.00 |

25

| Category | TOTAL |
|---|---|
| Data Hosting/E-Discovery | $381.08 |
| Transcript Fees | $73.92 |
| Air Express/Postage/Messengers | $66.60 |
| **GRAND TOTAL:** | **$82,790.80** |

97.    The above expenses were reasonable and necessary to the prosecution and resolution of this Action, and are the type of expenses that counsel typically incur in complex litigation, and for which counsel are typically reimbursed when the litigation gives rise to a common fund.

98.    *Expert Consultants:* Lead Counsel retained expert economic consultants to analyze and advise on issues of market efficiency, loss causation, and damages. These experts were essential to the overall prosecution and resolution of the Action and worked with Lead Counsel to assist in: (i) developing the claims asserted in the amended complaints; (ii) assessing loss causation, the strengths and weaknesses of Lead Plaintiff's claims, and class-wide damages for settlement negotiations; and (iii) developing the Plan of Allocation. The following chart details the experts retained by Lead Counsel, their respective areas of expertise, and the expenses associated with each:

| Expert/Consultant: | Area of Expertise and Work Performed: | Expenses: |
|---|---|---|
| Michael Marek, Financial Market Analysis LLC | Economics, Loss Causation – *assisting with the development of the claims asserted in the amended complaints.* | $7,600.00 |
| Global Economics Group | Economics—*assessing loss causation and classwide damages in connection with mediation; preparing Plan of* | $32,108.75 |

26

| Expert/Consultant: | Area of Expertise and Work Performed: | Expenses: |
|---|---|---|
| | *Allocation after settlement was reached.* | |

99.    *Mediation:*  Lead Counsel was responsible for one-half of Mr. Danilow's mediation fees, which included his review of the parties' mediation briefs, one remote mediation session, and related telephonic and written communications.

100.    *Computerized Legal Research:* Lead Counsel utilized digital research services in connection with its legal research conducted over the course of the approximately three years the Action has been pending. Legal research expenses are based upon the amounts billed by the Westlaw and PACER services.

101.    *Travel and Meals:* Lead Counsel incurred travel and meal expenses for the reimbursement of Lead Plaintiff's costs to travel to New York City for the hearing on lead plaintiff motions.

102.    *Appellate Filing Services:* Lead Counsel utilized an appellate filing service, Record Press, to assist in the compilation, formatting, printing, and mailing of Lead Plaintiff's appellate briefs and appendices.

103.    The remaining expenses relate primarily to filing fees, the cost of hosting a document database containing Lead Plaintiff's and Defendants' document productions, transcript fees, and postage.

104.    The Notice advises potential Settlement Class Members that Lead Counsel will be seeking reimbursement of expenses in an amount not to exceed $125,000.00. As noted above, there have been no objections to the request for reimbursement of expenses as stated in the Notice. In view of the complex nature of the Action, the expenses incurred were reasonable and necessary to

27

pursue the interests of the Class. Accordingly, Lead Counsel should be reimbursed in full from the Settlement Fund.

## IX.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF TIME AND EXPENSES

105.    The Notice informed Settlement Class Members that Lead Plaintiff may apply to the Court for reimbursement of its reasonable costs and expenses directly relating to its representation of the Settlement Class. Ex. 2-A at p. 2.

106.    As set forth in the accompanying Guiton Declaration, Lead Plaintiff has been actively involved in the Action and has diligently carried out its duties as a Court-appointed Lead Plaintiff and putative class representative. *See generally*, Ex. 6.

107.    Lead Plaintiff requests an award of $9,233.48 (Canadian $12,664.96)[6] to compensate it for its time spent litigating this matter on behalf of itself and the Settlement Class, as permitted under the PSLRA.

## X.    CONCLUSION

108.    For all the reasons detailed above, Lead Plaintiff and Lead Counsel respectfully request that that the Court approve the Stipulation, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and litigation expenses.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  October 14, 2022                 By: */s/ Frederic S. Fox*

                                         Frederic S. Fox
                                         Donald R. Hall
                                         Melinda Campbell
                                         **KAPLAN FOX & KILSHEIMER LLP**
                                         850 Third Avenue, 14th Floor

---

6    The U.S. dollar amount is based on U.S.-Canadian exchange rates as of October 13, 2022.

28

New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the*
*proposed Settlement Class*